159 N.J. Super. 104 (1978)
387 A.2d 368
STATE OF NEW JERSEY IN THE INTEREST OF H.M.T., JUVENILE.
STATE OF NEW JERSEY IN THE INTEREST OF P.J.W., JUVENILE.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1978.
Decided May 3, 1978.
*108 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Wayne J. Martorelli, Deputy Attorney General, argued the cause for the appellant (Mr. John J. Degnan, Attorney General of New Jersey; Mr. William F. Hyland, Former Attorney General of New Jersey).
Mr. George M. Dilts argued the cause for the respondents (Messrs. Bernhard, Durst and Dilts, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
These consolidated appeals in two factually unrelated cases raise a question of first impression in this jurisdiction regarding the right of a juvenile to a speedy trial. More specifically, we are here called upon to construe the requirement of R. 5:8-2(e) that an officer taking a juvenile into custody shall file a complaint "forthwith" and to consider in terms of the continued viability of the complaint the consequences of noncompliance with the "forthwith" mandate.
P.J.W., then 16 years old, was taken into custody by a Raritan Township police officer on April 21, 1976, having been accused of tampering with a motor vehicle in a hospital staff parking lot and of being in possession of stolen property. He was released on the same day in the custody of an adult guardian, subject only to the guardian's undertaking to produce him in court and to the "proper authorities" in connection with the "charges pending against him." *109 A Juvenile and Domestic Court complaint charging him with juvenile delinquency on the basis of this conduct was not, however, filed until September 3, 1976, some 4 1/2 months later. H.M.T., also then 16 years old, was taken into custody by another Raritan Township police officer on June 26, 1976, accused of a variety of motor vehicle offenses, including driving an automobile while under the influence of alcohol, driving without a license and leaving the scene of an accident. In addition to the motor vehicle charges he was also accused of fleeing from a police officer, in violation of N.J.S.A. 2A:170-25.8. He, too, was released on the same day in the custody of his adult guardian, subject to the same condition of production for required appearances as was imposed in the case of P.J.W. The complaint charging him with juvenile delinquency based on that episode was filed on September 15, 1976, some seven weeks thereafter. Neither complaint having been filed "forthwith" following the initial custody, both were dismissed by the court below on the juveniles' respective motions.
The trial judge's action was based upon his reading of R. 5:8-2(e), which provides in full as follows:
When a juvenile has been taken into custody in accordance with this rule [R. 5:8-2], the officer taking him into custody or his superior officer shall forthwith file a complaint with the court in accordance with R. 5:8-1.
It was the trial judge's perception that this rule mandated the dismissal of the complaints irrespective of such considerations as whether the delay resulted in prejudice to the juveniles, the reason for the delay and the promptness of the juveniles' assertion of their right. We are unable to agree. In our view, when the juvenile who has been taken into custody pursuant to R. 5:8-2 is released virtually immediately thereafter and is subject to no further predisposition detention, the officer's failure to comply with the "forthwith" directive of R. 5:8-2(e) is not in itself fatal to the further prosecution of the charges.
*110 In reaching our conclusion we are aware that juveniles are entitled to the same scope of procedural due process as is afforded to adults accused of crime to the extent consistent with the basic rehabilitative purposes of the juvenile process. See N.J.S.A. 2A:4-60. And see In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); State in Interest of S.H., 61 N.J. 108 (1972). We have no doubt that the Sixth Amendment right to a speedy trial is a due process right to which juveniles are entitled. We also have no doubt that the right to a speedy trial subsumes the right to have the adjudicative process initiated without undue delay. See State v. Szima, 70 N.J. 196, 199-200 (1976), cert. den. 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976). And see R. 3:25-3, which includes as grounds for dismissal because of delay not only an unreasonable delay in the trial of the charges but also an unreasonable delay in the return of the indictment or filing of the accusation. In the juvenile process the adjudicative process is triggered, of course, not by an indictment or accusation but rather by a complaint. R. 5:8-1. We are therefore satisfied that an unreasonable delay in the filing of a juvenile complaint may constitute a violation of the juvenile's due process rights whose vindication requires dismissal of the action.
As a matter of federal constitutional imperative, the test of a vitiating delay has been definitively articulated by Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In determining whether a delay is unreasonable in constitutional terms, the court is obliged to consider, balance and weigh four prescribed factors: the length of the delay, the reason for the delay, the prejudice to defendant resulting from the delay and defendant's assertion of the right. And see State v. Szima, supra; State v. Roundtree, 118 N.J. Super. 22 (App. Div. 1971); State v. Cappadona, 127 N.J. Super. 555, 558 (App. Div. 1974), certif. den. 65 N.J. 574 (1974), cert. den. 419 U.S. 1034, 95 S.Ct. 518, 42 L.Ed.2d 310 (1974). That *111 balancing test was clearly intended to constitute the substantive content of the unreasonable delay standard incorporated into R. 3:25-3 by the 1975 amendment of that rule. We further note that R. 3:1-1 expressly provides that the Part III rules shall govern juvenile proceedings in the Juvenile and Domestic Relations Court unless otherwise expressly provided for in Part V. The question, then, is whether the implementation of a juvenile's speedy trial right is governed by R. 3:25-3 and the Barker balancing test or whether R. 5:8-2(e) constitutes an express "other" provision superimposing on the Barker test an automatic dismissal remedy whenever the juvenile delinquency complaint is not forthwith filed. Considering both the policy and the historical development of R. 5:8-2(e), we are persuaded that that rule was not so intended and should not be so construed.
R. 5:8-2(e) in its present form is the concluding paragraph of the general rule, R. 5:8-2, governing the procedures to be followed when a juvenile is taken into custody without process. R. 5:8-2 derives from R.R. 6:8-3 of the 1953 revision of the court rules, which in its original version accorded a great deal of discretion to the police authorities in determining whether the juvenile would be thereafter released or retained and which, moreover, provided no mechanism for the expeditious judicial review of a police decision to retain (R.R. 6:8-3(c)). R.R. 6:8-3(d), the analogue of paragraph (e) of the present rule, required only that the officer taking the juvenile into custody "proceed to file a complaint." The first significant amendment of R.R. 6:8-3 occurred on September 1. 1967 when paragraph (c) thereof was revised to require immediate notice to and action by a Juvenile Court Judge in the event the juvenile was not immediately released after being taken into custody. The evident purpose of that amendment was to eliminate the then not uncommon situation in which a juvenile taken into custody was then either kept incommunicado for a protracted period of time or, if not incommunicado, *112 then detained until hearing and disposition without any prior judicial confrontation. Paragraph (d) of that rule, however, was then unchanged. R.R. 6:8-3, as amended in 1967, was thereafter carried over into the 1969 general revision of the court rules as R. 5:8-2, and the provision of R. 6:8-3(d) then designated as R. 5:8-2(c). It was in the 1969 revision that the term "proceed to file a complaint" was replaced by the current verbiage of "shall forthwith file a complaint," a modification referred to by the tentative draft of the 1969 revision as a "minor language change." See Proposed Revision of the Rules Governing the Court of the State of New Jersey (1966), at 591. And see Current N.J. Court Rules (Gann ed. 1969), at 701-702.
R. 5:8-2, together with R. 5:8-6 (governing pretrial detention and shelter care) was again comprehensively revised in September 1971[1] in further implementation of the policy that pretrial detention, whether with or without judicial hearing, be limited only to exceptional situations clearly militating against the immediate release of the juvenile into the custody of an appropriate adult and to further assure that when pretrial detention is imposed, that not only the detention itself but also the underlying charges are expeditiously adjudicated. Thus, not only is the judge of the Juvenile and Domestic Relations Court required to be immediately notified when police authorities determine not to immediately release the juvenile in an adult's custody (R. 5:8-2(d)) but the judge is also required to schedule a hearing on the complaint within 30 days after the second pretrial detention hearing. R. 5:8-6(d). The overriding concern thus reflected that unnecessary pretrial detention of juveniles be avoided and that charges be promptly disposed of where pretrial detention is judicially determined to be necessary was furthermore evidently the motivating consideration as well for the analogous 1974 federal legislation.[2] *113 Finally, we note that the provision of the rule we are here dealing with (redesignated as R. 5:8-2(e) by the 1971 amendment of the rule) has remained substantially unchanged in text since the 1969 revision.
The clear implication of this historical review is the conclusion that the special urgency suggested by the "forthwith" language of R. 5:8-2(e) was actually intended to be reserved for those situations in which the juvenile is retained in custody. Thus, while all juvenile matters must be tried as promptly as possible, we are satisfied that the primary thrust of the "forthwith" provision applies where a juvenile taken into custody under R. 5:8-2 is not immediately released and the underlying charge must be tried within the time frame of R. 5:8-6(d). In that situation a juvenile is entitled to know the precise nature of the charge forthwith in order to commence preparation of his defenses and responses thereto. A juvenile who is immediately released after being taken into custody, on the other hand, is for all practical purposes in no different a position than a juvenile who has not been taken into custody at all. And where there has been no initial custody there is neither a rule nor statute, other than the unreasonable delay provision of R. 3:25-2, prescribing a time period in which the complaint must be filed. We are, therefore, of the view that noncompliance by an officer with the forthwith provision of R. 5:8-2(e) when the juvenile has been promptly released, should not result in the automatic vitiation of further proceedings. Such a result is not only not required by constitutional mandate but would also run counter to and frustrate the Juvenile Court's essentially rehabilitative *114 function by unnecessarily depriving a juvenile in need thereof of the rehabilitative opportunities afforded by it. See State in Interest of J.J., 132 N.J. Super. 464 (J. & D.R. Ct. 1975). We hold, therefore, that the speedy trial rights of a nondetained juvenile are to be determined by application of the balancing test of Barker, supra, with special consideration to be given by the Juvenile Court judge to the effect of dismissal or nondismissal on the rehabilitative aspect of the juvenile justice system.
The State here urges that the delay was caused exclusively by reason of "administrative difficulties" in the local police department. We note that the juveniles waited some months after service of the respective complaints upon them before bringing on these dismissal motions. We further note that the release forms signed by their respective adult guardians, requiring each to produce the juvenile at "the court hearing on the charges pending against him" are certainly suggestive of the conclusion that the guardians were aware that the release of the juveniles into their respective custody did not constitute a final termination of the matter. No specific prejudice to the juveniles resulting from the delay in filing the complaints was urged below. Since, however, the trial judge did not consider the component factors of the Barker balancing test to be relevant, neither these matters nor such other facts bearing upon those factors were fully explored. In the interest of justice, we regard it as appropriate that that opportunity be afforded now and a determination made in the case of each of these juveniles as to whether under the precepts of Barker and considering the rehabilitative function of the court process, the delay in the filing of either of the complaints was unreasonable.[3]
*115 Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] These rules were again amended effective March 1, 1974 consistent with N.J.S.A. 2A:4-42 to 68, effective the same date.
[2] 18 U.S.C.A. § 5036 mandates the dismissal of charges against a youthful offender who is in detention pending trial if the trial is not held within 30 days from the date on which the detention began. And see United States v. Gonzalez-Gonzalez, 522 F.2d 1040 (9 Cir.1975); United States v. Cheyenne, 558 F.2d 902 (8 Cir.1977); United States v. Andy, 549 F.2d 1281 (9 Cir.1977).
[3] All of the motor vehicle counts arising under Title 39 and subject to the 30-day statute of limitations of N.J.S.A. 39:5-3 were dismissed by the court below as untimely filed. See State in Interest of B.H., 112 N.J. Super. 1 (J. & D.R. Ct. 1970). The State does not appeal that ruling and accordingly, the remand here is intended to apply only to those counts in the respective complaints not so barred.