697 A.2d 964

STATE OF NEW JERSEY IN THE INTEREST
OF A.H., A JUVENILE.

Superior Court of New Jersey
Chancery Division Family Part
Cape May County

Decided January 24, 1997.

*John W. Gilbert,* for the plaintiff.

*Jeffery A. April,* for the defendant.

BATTEN, J.S.C.

█ This pretrial motion to dismiss juvenile complaints on double jeopardy grounds requires consideration and adjudication of the effect of a finding of innocence by a referee at the conclusion of an informal "trial/non-mandatory counsel" proceed-

ing, on the record, and the rights, if any, of the complaining witness to "appeal" the referee's finding to this court for formal hearing *de novo*. Neither statute nor rule of court resolves these issues. The single reported opinion most factually similar, *State in the Interest of L.D.*, 174 *N.J.Super.* 263, 416 *A.*2d 410 (App.Div. 1980), predates the advent of "referee" proceedings and thus specifically and deliberately left unresolved the very issue which this court must now decide:

> ... whether an adjudication on an "informal hearing" occurring in the usual predictable procedural course of things precludes a later "formal hearing".
>
> [174 *N.J.Super.* at 264, 416 *A.*2d 410.]

The circumstances here involved are not unique; indeed, they likely will occur and recur in our trial courts as juvenile filings escalate in volume and our judicial institution must, in response, rely more heavily upon diversionary alternatives to formal/counsel-mandatory trial, that is, informal counsel-non-mandatory referee proceedings. The facts are these:

Juvenile A.H. (hereinafter "juvenile"), age 14, was charged on April 4, 1996, and May 5, 1996, with conduct which, if committed by an adult, would constitute, respectively, criminal trespass (*N.J.S.A.* 2C:18–3(b)(1)) and criminal mischief (*N.J.S.A.* 2C:17–3), disorderly persons offenses. The complainant in each matter is Jane Malewicz (hereinafter "complainant"), whose residence, #4—7th Street, Edgewood, Middle Township, New Jersey, is the situs of the alleged offenses. The complaints were screened administratively and scheduled for "trial/non-mandatory counsel" for July 12, 1996.[1] That proceeding, conducted on the record and

---

[1] A review of the court's official records establishes that the juvenile and complainant are not strangers to one another. The juvenile was earlier charged by the same complainant with conduct which, if committed by an adult, would constitute, (A) criminal mischief ("... chipping away at the patio bricks around the porch of her property ..."), *N.J.S.A.* 2C:17–3; (B) criminal trespass ("... upon the complainant's property ..."), *N.J.S.A.* 2C:18–3; (C) criminal mischief ("chipping her patio bricks at her residence ..."), *N.J.S.A.* 2C:17–3; (D) criminal mischief ("... chipping the brick porch area of [complainant's] home purposely to cause damage in excess of $500 ... fourth degree crime ..."),

before a referee appointed pursuant to *R.* 5:25–2, was prosecuted by complainant's privately retained counsel. The juvenile was also

*N.J.S.A.* 2C:17–3; (E) criminal trespass ("... knowingly entering or remaining on the complainant's property [as] to which notice against trespassing was given by posting of signs ..."), *N.J.S.A.* 2C:18–3. *See, ad seriatim,* juvenile complaints docketed FJ–05–204–96D (counts 1 and 2), FJ–05–585–96D (count 1) and FJ–05–789–96D. By recommendation dated November 17, 1995, the referee, after informal hearing, "dismissing with prejudice" one count of criminal trespass, finding a "basis for adjudication" on all remaining counts yet dismissing those counts on the conditions that:

(1) juvenile to have no contact either verbal or written with [complainant];

(2) juvenile not to harass plaintiff;

(3) juvenile to stay off plaintiff's property.

This recommendation was incorporated in an "order of disposition" by the court on November 27, 1995. No appeal was taken.

The juvenile had also been adjudicated delinquent on December 8, 1994, for conduct which, if committed by an adult, would constitute third degree burglary, in violation of *N.J.S.A.* 2C:18–2, disposition as to which was continued by the court for a one (1) year period per *N.J.S.A.* 2A:4A–43(b)(1) on the condition that "counseling reports to be sent to the prosecutor's office within forty-five (45) days"; FJ–05–735–95D. The victim was not the complainant herein yet resided apparently one (1) block away, at # 18—65th Street, Edgewood, Middle Township.

The court takes judicial notice, through its own records, that the November 27, 1995, order of disposition under FJ–05–204/585/789–96D entered within the one (1) year period of continued disposition for adjudication of third degree burglary under FJ–05–735–95D, entered December 8, 1994. Likewise, the filing dates of the complaints now before the court were filed and alleged acts of juvenile delinquency by this juvenile, against the very same complainant, occurred less than six months subsequent to the referee's November 27, 1995, finding of "basis for adjudication" yet "dismissed on conditions" as to three counts of criminal mischief and one count of criminal trespass.

As such, the juvenile's motion to dismiss bears significant consequence well beyond the parameters of disposition should he be adjudicated delinquent as to one or both of the charges now before this court. Indeed, adjudication of delinquency on either charge would constitute a violation of specific conditions to the dismissal of charges on the referee's recommendation of November 17, 1995, thus subjecting the juvenile to possible re-instatement of those charges, adjudication, and disposition by the court on the third degree burglary due to the juvenile's failure to remain law-abiding for the one year period of continued disposition. In such event, the court could impose any and all appropriate provisions of *N.J.S.A.* 2A:4A–43(b), including an indeterminate term of incarceration at the Training School for Boys, not to exceed two (2) years. *N.J.S.A.* 2A:4A–43(b); *N.J.S.A.* 2A:4A–44(d).

represented by privately retained counsel. The record before the referee consisted entirely of sworn testimony by the complainant. The juvenile did not testify; nor did defense counsel call any witnesses. At the conclusion of presentation of the complainant's case, the defense rested. The referee thereupon found that the record did not contain sufficient factual basis to sustain an adjudication of delinquency and "dismissed" the criminal mischief and criminal trespass charges subject only to the acceptance of the recommendation by the court by way of executed order; *R.* 5:25–2.[2]

By oral request of July 12, 1996, and confirming letter dated July 16, 1996, counsel for complainant requested "that the matter be reheard and testimony taken before a Judge of the Superior Court." Complainant, as explained by her counsel, "is not satisfied with the [referee's] finding and wishes to have the matter reheard. . . .". These complaints were then rescreened to the "formal/counsel mandatory" list and trial was scheduled for October 8, 1996. The complainant, juvenile and respective counsel appeared; defense counsel then moved, pre-trial, for dismissal of all charges on grounds of double jeopardy. Trial was continued and counsel was afforded opportunity to submit briefs on the issue. By motion filed October 15, 1996, the juvenile now seeks:

"... an order of the court dismissing the complaint ... and entering a finding of not guilty; ... in the alternative, [an order] accept[ing] the referee's decision and incorporat[ing] that decision ...

... in the alternative, ... an order ... directing the State to provide defense counsel with a transcript of the proceedings from which it appeals, and that the court conduct the requested appeal from the record of all papers on file ... including the transcript of the full hearing below".

The juvenile asserts that a second and formal hearing, with the attendant implications of possible commitment consequent to adjudications of delinquency on these charges and the violation of

---

[2] In pertinent part, *R.* 5:25–2 states:

... The recommendations of the referee shall be without effect unless approved by the court and incorporated in an appropriate order or judgment of the court.

conditions of informal disposition and adjudications on former charges [3] would violate his right to due process of law and would place him twice in jeopardy for the same offenses, contrary to *N.J.S.A.* 2C:1–9,[4] *N.J.S.A.* 2A:4A–40,[5] as well as *N.J. Const.* Article I, paragraph 11 [6] and *U.S. Const.* amend. V.[7] The complainant, in response, cites *State In Interest of J.J.*, 132 *N.J.Super.* 464, 334 *A.*2d 80 (J & D.R.Ct.1975) as authority for her position that the prior informal proceeding did not subject the juvenile to jeopardy. The juvenile, in reply, distinguishes the facts therein confronting Judge King from the facts here stipulated. To varying degree, each argument enjoys merit; neither, however, pre-

---

[3] See Footnote 1.

[4] *N.J.S.A.* 2C:1–9 states, in pertinent part, that:

A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:
a. The former prosecution resulted in an acquittal by a finding of not guilty by the trier of fact or in a determination that there was insufficient evidence to warrant a conviction. A finding of guilty of a lesser included offense is an acquittal of the greater inclusive offense, although the conviction is subsequently set aside.

[5] *N.J.S.A.* 2A:4A–40 states, in pertinent part, that:

All defenses available to an adult charged with a crime, offense or violation shall be available to a juvenile charged with committing an act of delinquency.

All rights guaranteed to criminal defendants by the Constitution of the United States and the Constitution of this State, except the right to indictment, the right to trial by jury and the right to bail, shall be applicable to cases arising under this act.

[6] *N.J.Const.* Article I, paragraph 11 states:

No persons shall, after acquittal, be tried for the same offense. All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great.

[7] The double jeopardy clause of the Fifth Amendment of the United States Constitution provides " ... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb". This federal constitutional requirement is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 *U.S.* 784, 89 *S.Ct.* 2056, 23 *L.Ed.*2d 707 (1969).

vails. Facts not yet found in any reported opinion and adoption of *R.* 5:25–2 subsequent to all other reported opinions compel new and different analysis.

First, informal juvenile hearings before an official other than a judge of the Superior Court, such as a *R.* 5:25–2 referee, are relatively recent phenomena. The rule, entitled "Referees", states:

> The judge of the family part may with the approval of the Chief Justice appoint a suitable person to act as referee. The recommendations of the referee shall be without effect unless approved by the court and incorporated in an appropriate order or judgment of the court.

Effective December 31, 1983, the rule postdates the reported cases cited by both counsel, *In re Gault,* 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967); *State v. G.J.,* 108 *N.J.Super.* 186, 260 *A.*2d 513 (App.Div.1969), *cert. den.* 55 *N.J.* 447, 262 *A.*2d 702 (1970); *State in Interest of J.J.,* 132 *N.J.Super.* 464, 334 *A.*2d 80 (J. & D.R.Ct.1975), and authorizes a type of diversionary, informal proceeding theretofore handled in all regards by judges of the Superior Court. The rule provision requiring approval by the court and incorporation of the referee's recommendation in an appropriate order or judgment of the court renders the delegation of fact-finding by a non-jurist a nullity absent formal ratification by the court.[8]

To this extent, the informal hearing here involved, having been conducted before a referee, is less formal than those informal hearings referenced in *In re Gault, supra, State v. G.J., supra,* and *State in Interest of J.J., supra.* Indeed, the means by which this motion comes before the court, i.e. appeal of referee's informal recommendation of dismissal, filed prior to approval by the court and memorialization in an order, bears less formality than the filing of a complaint alleging violations of a condition of probation imposed at disposition consequent to informal adjudication, *State*

---

[8] The August 9, 1996 order affirming the referee's dismissal of all charges was apparently executed subsequent to and without knowledge of the complainant's appeal therefrom and, as such, is hereby vacated *nunc pro tunc.*

*In Interest of J.J.*, *supra*, or institution of complaint alleging offenses identical to those contained in a complaint earlier dismissed after an informal proceeding at which only the juvenile appeared and related his version. *State In Interest of L.D.*, *supra*. In those cases, the imposition of probation and dismissal of complaint, respectively, were acts of the trial court, not a referee. Each decision was memorialized by court order or judgment; no appeal from the disposition consequent to informal hearing was ever taken.

In the instant case, however, the court has yet to act. The ratification of the referee's recommendation has not occurred, the consequence of the complainant's request for rehearing. Although the presence of counsel on behalf of the complainant and the juvenile suggests a degree of formality atypical of referee proceedings, the juvenile himself would seem to inure the greatest benefit therefrom. Indeed, counsel for the complainant and juvenile both acknowledge that the juvenile did not testify, a decision as to which defense counsel presumably contributed. The record considered by the referee—neither reviewed nor considered by this court—thus consisted of testimony by the complainant alone. For these reasons, the juvenile's due process rights to notice, confrontation and counsel do not appear to have been implicated. *In re Gault*, 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967); *In re Winship*, 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.*2d 368 (1970); *State In Interest of J.J.*, *supra*.

Second, the juvenile's claim that *N.J.S.A.* 2C:1–9 affords a basis for relief here is misplaced, given the clear and unambiguous language of the statute and *R.* 5:25–2. While the defense of double jeopardy is available in all juvenile delinquency adjudication hearings to the same extent as adult proceedings, *Breed v. Jones*, 421 *U.S.* 519, 95 *S.Ct.* 1779, 44 *L.Ed.*2d 346 (1975), *State in Interest of J.O.*, 242 *N.J.Super.* 248, 576 *A.*2d 342 (App.Div.1990), the failure of this court to "accept" the recommendation of the referee, i.e. dismissal, as a consequence of complainant's intervening request for rehearing precludes "acquittal" by "finding of not

guilty" by the "trier of fact". *N.J.S.A.* 2C:1–9(a). The referee's recommendation of dismissal amounts to an administrative decision yet to be ratified by the court; it is, again, a nullity. A referee designated per *R.* 5:25–2 is not a "trier of fact" whose recommendation enjoys judicial consequence absent ratification by the court; on the contrary, the very ratification process contemplated and mandated by the rule acknowledges and affirms the constitutional mandate that only judges of the Superior Court enjoy the power and obligation to discharge the duties of the judicial branch of our state government. *New Jersey Constitution,* Art. VI. The statute does *not,* therefore, preclude the formal hearing sought by complainant.

Third, *N.J.S.A.* 2A:4A–40 likewise does not compel dismissal of these complaints; this statute merely states that which our federal constitution and related cases clearly establish, i.e. the Fifth and Fourteenth Amendments afford juveniles the same right to procedural and substantive due process as afforded adults, including the proscription against double jeopardy. This court observes as did Judge King in *State In Interest of J.J., supra,* by way of comment upon this statute's predecessor, *N.J.S.A.* 2A:4–60, that:

> A review of the legislative history available to the court is not enlightening as to any special intent or design to be implied by the inclusion of the proscription against double jeopardy in the legislation. In the absence of any special mention the court can only conclude a legislative intent to restate the historic common law and constitutional concept of jeopardy as a reminder that they pertain to our juvenile justice system.
>
> 132 *N.J.Super.* at 467, 334 *A.*2d 80.

So, too, concludes this court in its application of *N.J.S.A.* 2A:4A–40 to this case. Indeed, this fundamental assumption by Judge King was later cited with approval by our Appellate Division in *State In Interest of L.D.,* 174 *N.J.Super.* 263, 267, 416 *A.*2d 410 (App.Div. 1980) *certif. denied* 85 *N.J.* 122, 425 *A.*2d 280 (1980):

> At the outset we observe that while at one point there may have been some doubt in New Jersey respecting the reach of constitutional protection in a proceeding involving a juvenile in terms of equivalents in the adult criminal procedure, *State in the Interest of Carlo,* 48 *N.J.* 224, 234–235, 225 *A.*2d 110 (1966) (and see especially the concurring opinion of Chief Justice Weintraub), we know now that many if not all basic substantial constitutional protections do indeed

belong to the juvenile in the juvenile proceeding. *In re Gault*, 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.2d* 527 (1975). In fact, the dynamics tend toward an expansion of the rights and protections afforded juveniles in both the federal and state courts. *State in Interest of W.M.*, 147 *N.J.Super.* 24, 26, 370 *A.2d* 519 (App.Div.1977). Whatever the outside limit of these perimeters may now be we are wholly satisfied they embrace a proscription against double jeopardy and require the assurance of due process. This requirement of due process—which is nothing more than fair play—is entrenched in the native heart as much by its nature as by the Constitution. Its mandate has never been in doubt. *Carlo, supra.* We endeavor to make its welcome as warm in our courts as we claim to do on our sporting fields. The difficulties arise not from any lack of sincerity or vigor in the acceptance of the due process and double jeopardy concepts. Rather, the problem is one of identifying when the factual circumstances trespass upon the off-limits territory.

Ascertainment of jeopardy's attachment, however, is not a purely objective task. The Appellate Division observed:

With respect to double jeopardy, the easiest definition has generally been framed in terms of jeopardy "attaching" when a jury has been impaneled and sworn, or upon the occurrence of an event in nonjury proceedings which resembles that. *State v. Rechtschaffer*, 70 *N.J.* 395, 404, 360 *A.2d* 362 (1976). As objective as this formula seems to be, exposure to jury consideration does not always prohibit a second trial. *United States v. Perez*, 22 *U.S.* (9 Wheat.) 579, 6 *L.Ed.* 165 (1824). For instance, "manifest necessity" and "the ends of public justice" remain recognized as concepts justifying a review of "the singular facts and circumstances of each case" in order to determine whether the bar should be imposed.

[174 *N.J.Super.* at 267, 268, 416 *A.2d* 410.]

Applying these principles to the instant case, the juvenile cannot now fairly argue that jeopardy "attached" to him at the informal proceeding before the referee.

 Double jeopardy generally occurs where there has been a prior adjudication or dismissal improperly granted, *State in Interest of C.K.*, 198 *N.J.Super.* 290, 486 *A.2d* 1284 (App.Div.1984); "judgment of acquittal, however erroneous, usually bars further prosecution...."; *Sanabria v. United States*, 437 *U.S.* 54, 98 *S.Ct.* 2170, 57 *L.Ed.2d* 43 (1978); *United States v. Scott*, 437 *U.S.* 82, 98 *S.Ct.* 2187, 57 *L.Ed.2d* 65 (1978), *certif. denied on remand*, 440 *U.S.* 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979); *cf. State in Interest of S.Z.*, 177 *N.J.Super.* 32, 424 *A.2d* 855 (App.Div.1981); *State in Interest of J.O.*, 242 *N.J.Super.* 248, 576 *A.2d* 342 (App.Div.1990); *State in Interest of D.P.*, 232 *N.J.Super.* 8, 556 *A.2d* 335 (App.Div.1989). Our nation's highest court has ap-

proached assertion of constitutional rights by a juvenile by examining the role and purpose of the particular procedural safeguard within the criminal justice system and then analyzing the effect of imposing that safeguard on the presumed substantive benefits of the juvenile process, i.e. informality, flexibility, confidentiality, speed of processing and opportunity for individual disposition and treatment, rather than punishment. *In re Gault, supra; In re Winship, supra.* Here, however, as in *J.J.*, the informal hearing afforded only a "somewhat minimally restrictive mode of treatment for the situation without any possible exposure to the serious consequence of incarceration." 132 *N.J.Super.* at 420, 334 *A.*2d 52. Indeed, the Juvenile Referee Program Standards, hereinafter "referee standards", adopted by our Supreme Court, specifically prohibit out-of-home placement as a dispositional alternative in a referee proceeding. Section VII thereof, entitled "Dispositions", states:

> Dispositional alternatives include those available to the Family Division judge with the exception of out-of-home placement. The referee can recommend dismissal of the complaint or an adjudication of delinquency. The *juvenile referee may recommend any of the dispositional alternatives available under N.J.S.A. 2A:4A–43b with the exception of N.J.S.A. 2A:4A–43b(4), (5), (6), and (7).*[9] [emphasis

---

[9] The referee may not:

(4) Transfer custody of the juvenile to any relative or other person determined by the court to be qualified to care for the juvenile;

(5) Place the juvenile under the care of the Department of Human Services under the responsibility of the Division of Youth and Family Services pursuant to P.L.1951, c. 138 s. 2(c) (C, 30:4C–2(c)) for the purpose of providing services in or out of the home. Within 14 days, unless for good cause shown, but not later than 30 days, the Department of Human Services shall submit to the court a service plan, which shall be presumed valid, detailing the specifics of any disposition order. The plan shall be developed within the limits of fiscal and other resources available to the department. If the court determines that the service plan is inappropriate, given existing resources, the department may request a hearing on that determination;

(6) Place the juvenile under the care and custody of the Commissioner of the Department of Human Services for the purpose of receiving the services of the Division of Developmental Disabilities of that department, provided that the juvenile has been determined to be eligible for those services under P.L.1965, c. 59, s. 16 (C. 30:4–25.4);

added] Examples of dispositional alternatives include but are not limited to unsupervised or supervised probation, suspension of driver's license, community service, restitution and fines including Violent Crimes Compensation Board (V.C.C.B.) assessments, counseling, and referral to appropriate community agencies. In determining restitution, the referee shall determine losses sustained by the victim(s) while taking into consideration the juvenile's ability to pay before arriving at a recommendation. No juvenile referee determination will be effective until the proposed finding and recommended order is signed by a Family Division judge.

Our statutory scheme therefore affords no basis for a finding, within the context of these facts, that jeopardy has attached as against this juvenile.

Fourth, the Fifth and Fourteenth Amendments to the federal constitution do not preclude complainant's appeal and formal proceeding before this court. While the Supreme Court of this state has consistently applied double jeopardy principles which accord with the more expansive language of our federal constitution (i.e. acquittal is not a precondition to invocation of the double jeopardy doctrine), these facts, particularly the informal yet unratified "recommendation" of the referee consequent to the informal proceeding, fall substantially shy, both procedurally and substantively, of the constitutional predicate to invocation of the double jeopardy doctrine to preclude further proceedings. The double jeopardy clause of our federal constitution is intended to protect a person against [1] "a second prosecution of an offense after acquittal of the same offense ... [2] a second prosecution of an offense after conviction of the same offense ... [3] multiple punishments for the same offense." *North Carolina v. Pearce*, 395 *U.S.* 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Barnes*, 84 *N.J.* 362, 370, 420 A.2d 303 (1980). Here, the juvenile has been neither acquitted nor convicted; likewise, the recommen-

---

(7) Commit the juvenile, pursuant to *applicable* laws *and the Rules of Court* governing civil commitment, to the Department of Human Services under the responsibility of the Division of Mental Health Services for the purpose of placement in a suitable public or private hospital or other *residential* facility for the treatment of persons who are mentally ill, on the ground that the juvenile is in need of involuntary commitment;
*N.J.S.A.* 2A:4A–43b(4), (5), (6), and (7).

dation of the referee has not subjected the juvenile to a single occasion of punishment, even less to repeated or multiple occasions of punishment. While this court recognizes that the "embarrassment, expense and ordeal" experienced by anyone—juvenile or adult—consequent to the "continuing state of anxiety and insecurity" given rise through the experience of an informal proceeding may equal in degree and effect that experienced through a formal proceeding now sought by the complainant, *Green v. United States,* 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223–24, 2 *L.Ed.*2d 199 (1957); *United States v. Martin Linen Supply Co.,* 430 *U.S.* 564, 569, 97 *S.Ct.* 1349, 1353–54, 51 *L.Ed.*2d 642 (1977), these important policy considerations ought not be permitted to cloud the court's essential analysis of ". . . whether the ruling of the judge, whatever its label, actually represents a *resolution,* correct or not, of some or all of the factual elements of the offense charged". 430 *U.S.* at 571, 97 *S.Ct.* at 1355. The referee's recommendation can hardly be so characterized.

Lastly, the standards contain neither authorization for nor prohibition against the *de novo* formal hearing now sought by complainant. Section VI of the standards, in pertinent part, states:

VI. *Procedure*

Procedure in the juvenile referee program shall be in accord with the following:

C. The referee shall explain that the hearing is a fact finding hearing after which the referee will make a recommendation to the judge as to the disposition. The referee shall advise the juvenile that he or she may request a trial *de novo* in the event that the juvenile declines to accept the referee's recommended disposition. The trial *de novo* must be requested at the time of the hearing. The trial *de novo* may be on the record of the juvenile referee proceedings if all parties consent. Complainants/victims should be advised that any objections to the findings or recommendations of the juvenile referee should be made known to the court at the time of the juvenile referee hearing. . . .

G. The juvenile referee may accept pleas.

In the event of a not guilty plea, the juvenile referee may conduct a hearing. Witnesses for the state (victim complainant, law enforcement officer) will be called to testify and the juvenile shall be given an opportunity to ask questions of the state's witnesses. The juvenile shall be given an opportunity to testify or to remain silent and to call any witnesses on his or her behalf. At the end of the

> hearing, the referee shall make "findings of fact", enter a finding of delinquent or not delinquent and make recommendations regarding disposition.
>
> In the event of a guilty plea, the referee shall take a factual basis for the plea, (ask the juvenile what happened, request a clear statement indicating guilt of the offense in the complaint as it is or as amended), gather other pertinent information, enter a finding, and make recommendations regarding disposition. . . .

The referee standards therefore specifically contemplate a right of appeal by way of formal adjudicatory hearing before a Superior Court judge in Family Part. Although the referee is required to advise only the juvenile—as opposed to the complainant—as to his or her rights of appeal and trial *de novo* should the referee's disposition be unacceptable, the standards fail to preclude any such appeal by an unsatisfied complainant, an apparent and appropriate deference to the constitutional "double jeopardy" analysis necessarily invoked by the trial court on a case-by-case basis. Complainant satisfied the requirement that trial *de novo* "be requested at the time of the hearing". Likewise, objections by complainant's counsel regarding the referee's "findings or recommendations" were "made known to the court at the time of the juvenile referee hearing". These objections were subsequently memorialized by complainant's counsel through written correspondence to the referee. As such, the conditions precedent to assertion of right to appeal and trial *de novo* have been fully and timely satisfied by the complainant. Limitation of the hearing *de novo* to the record below is permissive, notwithstanding consent by all parties. This language, per Section VI of the referee standards, clearly reserves to the trial court its constitutional prerogative to consider and resolve evidential issues of constitutional magnitude. *In re Gault, supra; State v. G.J., supra; State in Interest of J.J., supra.*

The foregoing analysis thus precludes the juvenile's successful invocation of the double jeopardy doctrine as a bar to complainant's appeal of the referee's unratified recommendation at the conclusion of an informal proceeding. This same analysis underscores the right of any party to an informal proceeding to appeal a referee's recommendation prior to ratification thereof by order or

judgment entered by a judge of the Superior Court. *R.* 5:25–2; *Juvenile Referee Program Standards,* Section VII.

The juvenile's alternative request that the appeal of the referee's recommendation consequent to the informal proceeding be limited in scope to the record below must be denied for reasons statutory and constitutional. This court, having relied exclusively upon limited factual representations by counsel as to the content of the record below, remains unfamiliar with the circumstances and proofs actually adduced before the referee and the logic, mistake and/or tactic attendant thereto. In fact, both counsel acknowledge that complainant was the only witness to testify in support of the charges against the juvenile; the defense rested without calling a single witness. The court assumes that the record of the hearing below reflects, in substantial part, evidential decisions by counsel on behalf of respective parties recognizing both the informal nature of the proceeding and the fact that the referee designated per *R.* 5:25–2 is neither a judge of the Superior Court nor necessarily an attorney licensed to practice law in this state and, presumably, proficient in the knowledge of our procedural and substantive law.[10] Limitation of the scope of review to

---

10 The referee standards contain specific requirements for qualification as a referee. Section III thereof states that referees must possess:

A. Admission to the New Jersey Bar and two years of related experience in juvenile case processing or representing or prosecuting of juveniles in the family court, *or*

A master's degree from an accredited institution in mental health or social or behavioral science discipline including degrees in social work, counseling, counseling psychology, mental health counseling or education and three years of related experience in juvenile case processing and conducting intake service conferences in the family court, *or*

A bachelor's degree from an accredited institution in a mental health or social or behavioral science discipline and four years related experience in juvenile case processing and conducting intake service conferences in the family court.

B. Legal or technical knowledge of the Code of Juvenile Justice, the Code of Criminal Justice and Rules of Evidence. [emphasis added]

C. Experience in conflict resolution.

Section IV, entitled "Training", states:

the informal record below would therefore be violative of the court's constitutional and statutory mandate. *N.J.S.A.* 2A:4A–21; *N.J.S.A.* 2A:4A–24; *N.J.S.A.* 2A:4A–40; *N.J.S.A.*2A:4A–43; *N.J.S.A.* 2A:4A–45; *N.J.S.A.* 2A:4A–70(d); *N.J.S.A.* 2A:4A–71; *N.J.S.A.* 2A:4A–72; *N.J.S.A.* 2A:4A–74(c)(d); *N.J.S.A.* 2A:4A–75; *State in Interest of J.J., supra; State in Interest of J.M.,* 57 *N.J.* 442, 445, 273 *A.*2d 355 (1971); *R.* 1:7–4; *R.* 5:24–5; *R.* 5:25–2. While the sworn prior testimony of a witness or witnesses may be both relevant and admissible at the formal proceeding, admissibility of such testimony by any witness called below should be determined *on motion and prior to trial.*[11]

Subject only to these considerations, complainant's appeal shall proceed to formal adjudicatory hearing *de novo* on all charges. Admissability of any portion of. the record developed before the referee below shall abide pre-trial motion(s). A different decision would clearly countervail (1) the stated legislative intent sought to be advanced through the rehabilitative processes and options available to the court, *N.J.S.A.* 2A:4A–43, and (2) the clear and unambiguous text of the Juvenile Referee Standards rendering a consensual stipulation by all parties to review of the record below permissive, thereby reserving to the court full discretion to invoke its constitutional prerogatives. While juveniles are entitled to due process to a degree substantially similar to that afforded adults, "automatic vitiation of further proceedings" consequent to a refer-

---

No juvenile referee shall hear a case without experience or training in the following areas:
* The Code of Juvenile Justice (including appropriate dispositions and the family based disposition philosophy), the Code of Criminal Justice and Rules of Evidence,
* the standards approved by the Supreme Court,
* conflict resolution techniques, and
* the availability and use of resources and services in the vicinage.

11 Here, the juvenile was represented by counsel at the informal referee hearing and did not testify. The court therefore expresses no opinion as to the admissibility of a juvenile's testimony, counseled or uncounseled, given during an informal referee proceeding, when sought to be admitted into the record at a subsequent formal proceeding on the same charges.

ee's informal and unratified recommendation is "... a result ... not only not required by constitutional mandate but [a result which] would also run counter to and frustrate [the courts'] essentially rehabilitative opportunities afforded by it". *State in Interest of H.M.T.*, 159 *N.J.Super.* 104, 114, 387 *A.*2d 368 (App. Div.1978). The Fifth and Fourteenth Amendments to the federal constitution do not preclude complainant's appeal and formal adjudicatory proceeding before this court; to the contrary, they safeguard that right.

These complaints shall be scheduled for formal counsel-mandatory proceedings and listed for trial *de novo* in due course.