960 A.2d 758 (2008)
404 N.J. Super. 69
STATE of New Jersey in the Interest of P.M.P.
DOCKET NO. A-5156-07T4
Superior Court of New Jersey, Appellate Division.
Argued October 22, 2008.
Decided December 1, 2008.
*760 J. Vincent Molitor, Assistant Cape May County Prosecutor, argued the cause for appellant, State of New Jersey (Robert L. Taylor, Cape May County Prosecutor, attorney; Mr. Molitor, of counsel and on the brief).
Amira R. Scurato, Assistant Deputy Public Defender, argued the cause for respondent, P.M.P. (Yvonne Smith Segars, Public Defender, attorney; Ms. Scurato, of counsel and on the brief).
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
The threshold question posed on appeal asks whether a juvenile delinquency complaint, filed at the direction of a county prosecutor's office, is the substantial equivalent of an indictment such that it initiates a formal adversarial proceeding and triggers a juvenile's right to counsel. The trial court extended the protections of State v. Sanchez, 129 N.J. 261, 277, 609 A.2d 400 (1992), to juvenile proceedings, concluding the right to counsel afforded a juvenile charged with delinquency attached when the prosecutor's office filed a complaint. We reverse.
The facts giving rise to this appeal are not disputed. On February 19, 2008, twelve-year-old T.B. reported she had been raped by P.M.P. The alleged incident occurred approximately five years *761 earlier when T.B. was seven and P.M.P. was sixteen. P.M.P. is now twenty-one.
Following the victim's video interview, Detective Ashlee Hand conducted a consensual telephone intercept. Detective Hand phoned P.M.P. pretending to be T.B. Believing Detective Hand was T.B., P.M.P. apologized for his conduct. However, the telephone call was not recorded because the recording equipment malfunctioned. That same day, the County Prosecutor's Office filed a juvenile delinquency complaint executed by Detective Hand charging P.M.P. with offenses, which if committed by an adult would constitute first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).
The undocketed juvenile complaint was presented to the Family Part judge that evening. Detectives Hand and Daniel Holt appeared. Although not evident from the transcript, an attorney from the public defender's office was present in the courtroom, having appeared in earlier hearings. The prosecutor's office related the facts surrounding the victim's disclosure and sought a warrant to take P.M.P. into custody.
The judge was also presiding over another Family Part matter in which P.M.P. appeared. In the other matter, P.M.P.'s son was the subject of a Title 9 action initiated by the Division of Youth and Family Services (DYFS). After removing the child from his mother's custody, DYFS placed the one-year-old in P.M.P.'s care. In the DYFS matter, P.M.P. was represented by counsel from the Parental Representation Unit of the public defender's office.
Following the prosecutor's presentation of testimony supporting the delinquency charges, the judge stated:
What I would like to do, however, is this. I'm here all day tomorrow, but first thing would probably be better. My suggestion, Detective, would be that you apprehend [P.M.P.] on the basis of this complaint and bring him here to court tomorrow morning and let's hash it out a little bit.
....
[I]n the context of the hour and the fact that I think there's a household there that would be really disrupted seriously ifI have a juvenile matter I'm hearing, a first detention hearing, tomorrow morning at nine o'clock. But if you folks want to have him here right at nine, I'll hear you and we'll figure out what's the appropriate and safe thing to do.
The court issued a warrant, in lieu of a summons, for P.M.P. to be taken into custody the next day.[1]
On February 20, 2008, Detectives Hand and Holt, accompanied by a local police detective, arrived at P.M.P.'s home. When he saw the detectives, P.M.P. stated: "I know why you are here, she called me last night." The detectives took P.M.P. to the County Prosecutor's Office for processing. He was fingerprinted, photographed, and interviewed. Prior to the interview, Detective Hand read him his Miranda[2] rights from a form. P.M.P. stated he understood his rights, signed the form, and stated he waived those rights and was willing to speak to the detectives without an attorney. Detective Hand then conducted a video interview. P.M.P. confessed *762 to sexually assaulting T.B. on two different occasions.[3] At 11 a.m., after obtaining P.M.P.'s confession, the prosecutor's office turned him over to the County Sheriff's Department to be brought before the Family Part judge for a detention hearing.
P.M.P. filed a motion to suppress his custodial statement. He argued the detectives were obligated to present P.M.P. before the court at 9 a.m., at which time his attorney in the Title 9 matter would have been contacted and consulted. Thus, by ignoring the Family Part order to appear at 9 a.m., defense counsel was prevented from aiding P.M.P.
The Family Part judge concluded the juvenile delinquency complaint initiated by the prosecutor's office was the "functional equivalent of an indictment." Therefore, applying Sanchez, the court found P.M.P.'s right to counsel attached when the complaint was filed. The court ordered P.M.P.'s custodial statement suppressed, concluding the State's post-complaint interrogation violated P.M.P.'s due process rights.
The State appeals from that order arguing:
POINT I.
THE POLICE DID NOT VIOLATE A COURT ORDER.
POINT II.
THIS COURT SHOULD REVERSE [THE COURT'S] DECISION TO GRANT DEFENDANT'S MOTION TO SUPPRESS.
A. DIFFERENCES BETWEEN AN INDICTMENT AND A DELINQUENCY COMPLAINT.
B. DIFFERENCES BETWEEN THE GOALS OF THE ADULT SYSTEM AND THE JUVENILE SYSTEM.
The State suggests the fundamental difference between the goals and procedures of the juvenile justice system and the criminal court prohibit equating a juvenile complaint with an indictment.[4] It is helpful to first review some general constructs guiding both types of proceedings.
The adult criminal process may commence with the filing of a complaint. However, the prosecution cannot proceed absent "presentment or indictment of a grand jury." N.J. Const. art. I, paragraph 8; R. 3:7-3(a). This constitutional guarantee principally serves to "inform the defendant of the nature of the offense charged against him so he may adequately prepare his defense[.]" State v. Rios, 17 N.J. 572, 603, 112 A.2d 247 (1955); State v. Lopez, 276 N.J.Super. 296, 302, 647 A.2d 1351 (App.Div.), certif. denied, 139 N.J. 289, 654 A.2d 469 (1994). Moreover, an indictment must be sufficiently specific to enable a defendant to avoid a subsequent prosecution for the same offense, State v. Wein, 80 N.J. 491, 497, 404 A.2d 302 (1979), and "to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge." State v. Boratto, 80 N.J. 506, 519, 404 A.2d 604 (1979).
The return of an indictment has been determined to be the pivotal point in the criminal process.
The return of an indictment transforms the relationship between the State and the defendant. By obtaining the indictment, the State represents that it has *763 sufficient evidence to establish a prima facie case. Once the indictment is returned, the State is committed to prosecute the defendant. From that moment, if not before, the prosecutor and the defendant are adversaries.
[Sanchez, supra, 129 N.J. at 276, 609 A.2d 400.]
"As a general rule, after an indictment and before arraignment, prosecutors or their representatives should not initiate a conversation with defendants without the consent of defense counsel." Ibid. Even the issuance of Miranda warnings and a defendant's waiver of rights will not cure the constitutional violation. Any custodial statement obtained will be suppressed as a matter of law under Article I, paragraph 10 of the New Jersey Constitution. State v. A.G.D., 178 N.J. 56, 64, 835 A.2d 291 (2003).
On the other hand, prior to indictment, "prosecutors or their representatives, including the police, properly may interrogate a suspect without the consent of defense counsel ... after the State has filed or issued a criminal complaint or arrest warrant against that suspect."
The Court has chosen not to extend Sanchez to apply to pre-indictment proceedings concluding, "`the federal constitution's safeguards ... are entirely adequate.'" A.G.D., supra, 178 N.J. at 65, 835 A.2d 291 (quoting State v. Tucker, 137 N.J. 259, 291, 645 A.2d 111 (1994) (non-waivable right to counsel not extended to period time of first appearance)), cert. denied, 513 U.S. 1090, 115 S.Ct. 751, 130 L.Ed.2d 651 (1995). The Court stated, a conclusion to extend our State Constitution to "afford greater protection to our citizens than is afforded by the Federal Constitution" is warranted when "greater protection is appropriate on the basis of constitutional text, legislative history, state traditions, or other factors." Ibid.
Turning to New Jersey's Code of Juvenile Justice, N.J.S.A. 2A:4A-21 to-91, "delinquency" is defined to include acts by persons under eighteen, which would constitute crimes, disorderly persons offenses, petty disorderly persons offenses or other violations of penal statutes, ordinances or regulations if committed by persons over eighteen. N.J.S.A. 2A:4A-23. The Code makes clear juvenile court proceedings are not "criminal [prosecutions,] but are exercises of the State's parens patriae jurisdiction in the interests of the juveniles." In re State in the Interest of Steenback, 34 N.J. 89, 104, 167 A.2d 397 (1961); State in the Interest of T.L.O., 94 N.J. 331, 342, n. 5, 463 A.2d 934 (1983), rev'd on other grounds, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The juvenile court is a civil one, within the Family Division.
The principal objective of juvenile process is protective not punitive. N.J.S.A. 2A:4A-21; State in the Interest of S.S., 367 N.J.Super. 400, 407, 842 A.2d 904 (App.Div.2004), aff'd, 183 N.J. 20, 21, 869 A.2d 875 (2005); State in the Interest of K.O., 327 N.J.Super. 555, 567, 744 A.2d 233 (App.Div.2000). The juvenile court judge invokes education and treatment services to achieve reformation and rehabilitation of a juvenile offender, K.O., supra, 327 N.J.Super. at 567, 744 A.2d 233. We acknowledge that in a small percentage of very serious cases, "punishment has joined rehabilitation as a component of the State's core mission with respect to juvenile offenders." State v. Presha, 163 N.J. 304, 314, 748 A.2d 1108 (2000).
A juvenile delinquency proceeding is initiated by the filing of a civil complaint in the Family Part. N.J.S.A. 2A:4A-30. In addition to the juvenile's identifying information, the complaint must state "[t]he date, time, manner, and place of the acts alleged as the basis of the complaint" *764 and "include a citation of the law or ordinance allegedly violated by the juvenile." N.J.S.A. 2A:4A-30(a)(3) and (4); R. 5:20-1(a). The provisions of both N.J.S.A. 2A:4A-30(a)(3) and Rule 5:20-1(a)(3) are satisfied when "the complaint sets forth sufficient information to permit the juvenile to plan and assert his defense[.]" State in the Interest of K.A.W., 104 N.J. 112, 120, 515 A.2d 1217 (1986). "[I]f that end is met, due process is satisfied...." State in the Interest of A.R., 57 N.J. 71, 73, 269 A.2d 529 (1970).
Unlike an indictment, the complaint may be executed by "any person having knowledge of the facts alleged to constitute delinquency or who is informed of such facts and has reason to believe they are true[.]" R. 5:20-1(a)(4). The complaint is reviewed by the Family Division intake services unit for recommendation of whether it shall be dismissed, diverted or referred for court action. R. 5:20-1(c).[5]
Fundamental due process requirements afforded to adults charged with crimes are applicable to juveniles charged with delinquency. State in the Interest of W.E.C., 81 N.J. 442, 409 A.2d 798 (1979). The Legislature has accorded a juvenile all rights guaranteed to an adult charged with a crime except the right to a jury trial, the right to bail and the right to indictment. N.J.S.A. 2A:4A-40; State in the Interest of H.M.T., 159 N.J.Super. 104, 110, 387 A.2d 368, (App.Div.1978); see also In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
A minor charged with acts of juvenile delinquency that may result in a curtailment of the juvenile's freedom has the right to counsel "at every critical stage of the proceeding." N.J.S.A. 2A:4A-39; R. 5:3-4; Gault, supra, 387 U.S. at 41, 87 S.Ct. at 1451, 18 L.Ed.2d at 554. Also, the "constitutional safeguard of voluntariness" applies to confessions obtained in juvenile proceedings. In re Carlo, 48 N.J. 224, 235, 225 A.2d 110 (1966); see also State v. Presha, 163 N.J. 304, 329, 748 A.2d 1108 (2000).
The protective philosophy of juvenile justice also permeates custodial interrogation. Taking a juvenile into custody "shall not be construed as an arrest but shall be deemed a measure to protect the health, morals and well-being of the juvenile[.]" R. 5:21-1; N.J.S.A. 2A:4A-33. Further, any person taking the juvenile into custody shall immediately notify the juvenile's parents, guardian or other custodian. N.J.S.A. 2A:4A-33. "Parents are in a position to assist juveniles in understanding their rights, acting intelligently in waiving those rights, and otherwise remaining calm in the face of an interrogation." Presha, supra, 163 N.J. at 315, 748 A.2d 1108.
This longstanding safeguard emphasizes the role of a parent in the context of a juvenile interrogation. "`Whenever possible ... no child should be interviewed except in the presence of his parents or guardian.'" Id. at 314, 748 A.2d 1108 (quoting In re S.H., 61 N.J. 108, 114-15, 293 A.2d 181 (1972)); Carlo, supra, 48 N.J. at 227, 225 A.2d 110. In cases where a juvenile is less than age fourteen, any confession resulting from interrogation conducted in the absence of a parent or guardian is generally deemed inadmissible as a matter of law. Presha, supra, 163 N.J. at 315, 748 A.2d 1108. "By elevating the significance of the adult's role in the overall balance, we are satisfied that the rights of juveniles will be protected in a *765 manner consistent with constitutional guarantees and modern realities." Ibid.
Critical to the trial judge's determination and P.M.P.'s argument is the analogy to criminal process: that is, the delinquency charges are a criminal prosecution that immerses a juvenile into "the intricacies of substantive and procedural criminal law." Rothgery v. Gillespie County, ___ U.S. ____, 128 S.Ct. 2578, 2583, 171 L.Ed.2d 366, 374 (2008). While we agree the juvenile delinquency process mirrors its adult counterpart in many ways, it is not the same. The admittedly different objectives of and procedures followed by the Family Part in juvenile delinquency matters cannot lead to the wholesale importation of the system of adversary criminal justice to Family Part juvenile matters.
This leads us to the question of whether due process protections require the imposition of a Sanchez-like rule, imposing an unwaivable right to counsel during post-complaint interrogation of a minor. We conclude the due process protections afforded juveniles charged with delinquency when taken into custody satisfactorily safeguards their rights. We decline to apply Sanchez to this appeal.
We further comment on the unique facts of this case. Were P.M.P. an adult offender charged with criminal conduct, the procedures followed by the detectives would not have evoked objection. A.G.D., supra, 178 N.J. at 59, 835 A.2d 291. The issue results solely because P.M.P. was processed upon the filing of a juvenile delinquency complaint. However, we cannot overlook the reality that when P.M.P. was taken into custody he was an adult. This is significant because P.M.P. was not impeded by youthful age or immaturity when he expressed his clear desire to respond to the State's interrogation. The detectives advised, and he understood, he was being charged with the aggravated sexual assault of T.B. He recognized the gravity of the situation he faced and was properly Mirandized. There is no challenge to his knowing, intelligent, and voluntary waiver of rights, including the right to consult counsel. See Presha, supra, 163 N.J. at 313, 748 A.2d 1108. Moreover, P.M.P. appreciated the process of securing legal representation, as he had qualified for the appointment of a public defender to represent him in the DYFS matter.
For all of these reasons, we determine no basis requires the right of counsel to attach such that a juvenile's interrogation is precluded without counsel present. We conclude the existing procedures adequately protect a juvenile who is taken into custody after a delinquency complaint has been filed but prior to his first court appearance. Accordingly, we reverse the order suppressing P.M.P.'s custodial statement.
Reversed.
NOTES
[1] We are aware of no authority granted to a Family Part judge allowing him to limit law enforcement's power to arrest, suggested by these facts.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] A second juvenile delinquency complaint charged P.M.P. with second-degree sexual assault, N.J.S.A. 2C:14-2(b) and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), as a result of his confession.
[4] We direct our review to the State's second point and choose not to address the first argument offered.
[5] Complaints alleging conduct that if committed by an adult constitutes a crime, N.J.S.A. 2C:1-4(a), require prosecutorial consent for diversion. R. 5:20-1(c).