975 A.2d 441 (2009)
200 N.J. 166
STATE of New Jersey in the Interest of P.M.P.
A-63 September Term 2008
Supreme Court of New Jersey.
Argued April 28, 2009.
Decided July 29, 2009.
*442 Amira R. Scurato, Assistant Deputy Public Defender, argued the cause for appellant P.M.P. (Yvonne Smith Segars, Public Defender, attorney).
Daniel I. Bornstein, Deputy Attorney General, argued the cause for respondent State of New Jersey (Anne Milgram, Attorney General of New Jersey, attorney; Mr. Bornstein and J. Vincent Molitor, Assistant Cape May County Prosecutor, on the briefs).
Christopher D. Adams, Roseland, submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (Walder, Hayden & Brogan, attorneys; Mr. Adams and Leigh-Anne Mulrey, of counsel).
Laura A. Cohen submitted a brief on behalf of amici curiae Rutgers Urban Legal Clinic Rutgers School of Law-Newark, National Juvenile Defender Center, American Civil Liberties Union of New Jersey, Children's Justice Center Rutgers School of Law-Camden, and Northeast Juvenile Defender Center (Urban Legal Clinic Rutgers School of Law-Newark, attorneys).
Justice WALLACE, JR., delivered the opinion of the Court.
In this case, a detective in the Prosecutor's Office prepared a juvenile delinquency complaint against a twenty-year-old defendant for unlawful conduct he allegedly committed as a teenager. After signing the complaint, the detective and an assistant prosecutor appeared before a Family Part judge to request an arrest warrant. The judge issued the warrant and suggested that the State return with defendant at nine o' clock the next morning for a detention hearing. The following day, the police arrested defendant, transported him to the Prosecutor's Office, read him his Miranda[1] rights, and obtained a statement from defendant in which he admitted to wrongdoing. Later that morning, the police presented defendant to the trial judge for the detention hearing.
*443 Defendant eventually filed a motion to suppress his statement. The trial judge granted his motion, finding that the prosecutor's filing of a juvenile delinquency complaint was the functional equivalent of an indictment, and therefore, defendant's right to counsel attached when the complaint was filed. The judge held that the interrogation of defendant without the presence of counsel violated defendant's Sixth Amendment right to counsel. The Appellate Division granted the State's motion for leave to appeal and reversed. We granted defendant's motion for leave to appeal and now reverse. We hold that the filing of the complaint and obtaining of a judicially approved arrest warrant by the Prosecutor's Office was a critical stage in the proceedings, and pursuant to N.J.S.A. 2A:4A-39b(1), defendant had the right to counsel and could not waive that right "except in the presence of and after consultation with counsel." Ibid.

I.
We derive our summary of the facts largely from the proofs presented at the suppression hearing. On February 19, 2008, the Lower Township Police Department contacted the Cape May County Prosecutor's Office with information that T.B. accused defendant of sexual assault. T.B. was born in April 1995, and defendant, who was twenty years old at the time of his arrest, was born in September 1987. T.B. claimed that the sexual assaults occurred one summer when she was either six or seven years old. Thus, defendant would have been either thirteen or fourteen years old at the time of the assaults.
Detective Ashlee Hand of the Cape May County Prosecutor's Office investigated the matter. She immediately conducted a video interview of T.B., in which T.B. confirmed the allegations. Later that day, Detective Hand telephoned defendant and pretended to be T.B. The first two minutes of the call were recorded, but due to a malfunction in the recorder, the remainder of the conversation was not. Detective Hand reported that defendant believed he was talking with T.B. and apologized for his conduct.
Following that conversation, Detective Hand, on behalf of the County Prosecutor's Office, prepared a juvenile delinquency complaint against defendant. The complaint declared that defendant committed "an act of sexual conduct with T.B., for the purpose of sexually arousing or sexually gratifying himself or to humiliate or degrade T.B., when T.B. was less than thirteen years old, defendant being at least four years older than T.B., specifically by fondling the victim's genital[s] with his hand."
Assistant Prosecutor Christine Smith, along with Detectives Hand and Dan Holt, then appeared before the Honorable Kyran Connor, J.S.C., in the Family Part. Detective Holt briefly outlined the allegations in the delinquency complaint and asked the judge for authority to detain defendant. The trial judge was familiar with defendant from a recent Division of Youth and Family Services (Division) matter. In that case, defendant was represented by counsel from the Parental Representation Unit of the Public Defender's Office, and the judge had approved the placement of defendant's son with him. The judge suggested that the State apprehend defendant on the complaint and bring him to court first thing the next day. The judge explained that
in the context of the hour and the fact that I think there's a household there that would be really disrupted seriously ifI have a juvenile matter I'm hearing, a first detention hearing, tomorrow morning at nine o' clock. But if you folks want to have him here right at *444 nine, I'll hear you and we'll figure out what's the appropriate and safe thing to do. All right? Okay, thanks.
The judge then approved the issuance of a warrant in lieu of a summons for the police to apprehend defendant.
The next day, February 20, 2008, Detectives Hand and Holt executed the warrant and arrested defendant at his home. The detectives stated that defendant immediately responded, "I know why you are here. She called me last night." The detectives transported defendant to the Cape May County Prosecutor's Office where he was fingerprinted, photographed, and read his Miranda rights. Defendant waived his rights and agreed to speak to the detectives. During the interview, defendant admitted that he had sex with T.B., and that on another occasion he touched her private parts.
Around eleven o' clock that morning, the detectives transported defendant to the courthouse for a detention hearing. A deputy public defender represented defendant at the hearing. Based on the evidence presented, the judge ordered that defendant be detained.
Defendant filed a motion to suppress his statement of February 20, 2008. He argued that the State deliberately disregarded the court's order to produce him at nine o' clock a.m. to take advantage of the window of opportunity to interrogate him before he was assigned counsel in the matter. The State opposed the motion, asserting that defendant never invoked his right to counsel on February 20. The State also filed a motion to waive the matter to adult court.
The judge held a hearing on both motions on May 8, 2008. The State's proofs established that the incident occurred when the victim was six or seven years old. Because defendant would have been thirteen if the victim were six when the assaults occurred, the judge concluded that the State failed to prove that defendant was fourteen or older at the time of the offense. Consequently, the judge denied the State's motion to waive defendant to adult court.
In regard to defendant's motion to suppress, the judge found that the complaint filed by the Prosecutor's Office was "the substantial equivalent of a criminal indictment." The judge referenced State v. Sanchez, 129 N.J. 261, 609 A.2d 400 (1992), which held that after indictment a defendant may not waive the right to counsel without the approval of counsel. The judge reasoned that defendant's right to counsel attached at the time the complaint was filed, and therefore the State should not have initiated conversation with defendant without the consent of counsel. As a result, the judge suppressed defendant's statement.
The State sought and received a stay in the proceedings to seek leave to appeal the court's ruling on the suppression motion. The Appellate Division granted leave to appeal and reversed. State ex rel. P.M.P., 404 N.J.Super. 69, 73, 960 A.2d 758 (2008). The panel focused on the State's argument that the order granting the suppression motion should be reversed because "the fundamental difference between the goals and procedures of the juvenile justice system and the criminal court prohibit equating a juvenile complaint with an indictment." Id. at 76, 960 A.2d 758. The panel emphasized the parens patriae role of the juvenile court and concluded that the existing due process protections, including the role of parents in the context of juveniles' custody and interrogation, are sufficient to "satisfactorily safeguard[] [the juvenile's] rights." Id. at 78-80, 960 A.2d 758. The panel also noted that in the unique facts of this case, defendant was an adult when arrested, did not challenge the *445 validity of his Miranda waiver, and appreciated the significance of obtaining counsel because he was represented in the Division matter. Id. at 81, 960 A.2d 758.
We granted defendant's motion for leave to appeal. 197 N.J. 472, 963 A.2d 842 (2009). We granted amicus curiae status to the Association of Criminal Defense Lawyers of New Jersey (ACDL), and jointly to Rutgers Urban Legal Clinic, Rutgers School of Law-Newark; National Juvenile Defender Center; American Civil Liberties Union of New Jersey; Children's Justice Center, Rutgers School of Law-Camden; and Northeast Juvenile Defender Center (collectively the Rutgers Group).

II.
Defendant argues that under both the United States Constitution and New Jersey Constitution, his right to counsel attached when the prosecutor submitted the delinquency petition to the trial judge, and that therefore, his uncounselled statement to the police was properly suppressed. He also contends that the Prosecutor's Office intentionally failed to comply with the trial judge's order to produce him in court at nine o' clock so that the State could question him before he was assigned counsel.
The State counters that the Appellate Division correctly reversed the trial judge's order granting defendant's motion to suppress. The State urges that a juvenile delinquency complaint is not the equivalent of an indictment, which is a fundamental constitutional right, because a juvenile complaint is governed by statute and is not of constitutional dimension. The State adds that, unlike an indictment issued by a grand jury, a complaint charging delinquency "may be signed by any person who has knowledge of the facts alleged to constitute delinquency or is informed of such facts and believes that they are true." N.J.S.A. 2A:4A-30a. In addition, the State notes that the goals of the juvenile system, which are primarily protection and rehabilitation, differ from the goals of the adult criminal justice system, which are primarily punitive. The State contends that the current safeguards and procedural protections available to juveniles during police interrogations are adequate to protect their rights. Furthermore, the State argues that the trial judge did not order that defendant be produced in court at nine o' clock, but merely suggested that time because court would be in session.
Amicus ACDL urges that the trial court correctly determined that for the purposes of N.J.S.A. 2A:4A-39, a delinquency complaint filed at the direction of a county prosecutor's office is the substantial equivalent of an indictment. ACDL contends that the complaint initiates formal adversarial proceedings and therefore triggers defendant's Sixth Amendment right to counsel. ACDL adds that the Appellate Division's decision ignored the State's protective mission concerning juvenile offenders.
Amicus the Rutgers Group urges that legislation, court rules, and case law in other jurisdictions support the conclusion that a juvenile's right to counsel attaches, at the latest, when a complaint is filed. The Rutgers Group contends that recent studies in adolescent brain development indicate that additional safeguards are needed to protect the due process rights of juveniles and argues that defense counsel should be present at all custodial interrogations of juveniles.

III.

A.
Preliminarily, we note that our Legislature grants to juveniles "[a]ll defenses available to an adult charged with a crime, *446 offense or violation." N.J.S.A. 2A:4A-40. Further, except for the right to indictment, the right to a jury trial, and the right to bail, "[a]ll rights guaranteed to criminal defendants by the Constitution of the United States and the Constitution of this State ... [are] applicable to cases arising under [the juvenile code]." Ibid.
We recently explained that "Article I, Paragraph 10 of the New Jersey Constitution is `consonant with the Federal Constitution on the issue of when the right to counsel is triggered.'" State v. A.O., 198 N.J. 69, 82, 965 A.2d 152 (2009) (quoting State v. P.Z., 152 N.J. 86, 110, 703 A.2d 901 (1997)). Under federal law, "the right to counsel ... [attaches at] the initiation of adversary judicial criminal proceedings" against the defendant. Rothgery v. Gillespie County, ___ U.S. ___, 128 S.Ct. 2578, 2583, 171 L.Ed.2d 366, 374 (2008) (internal quotations and citation omitted). This includes proceedings that are initiated "`by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" United States v. Gouveia, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 154 (1984) (quoting Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972) (plurality opinion)).
Although federal law provides that a defendant's Sixth Amendment right to counsel after indictment is "[no] more difficult to waive than the Fifth Amendment counterpart," Patterson v. Illinois, 487 U.S. 285, 297-98, 108 S.Ct. 2389, 2397, 101 L.Ed.2d 261, 275 (1988), we parted company from that principle in State v. Sanchez, 129 N.J. 261, 276, 609 A.2d 400 (1992). We held in Sanchez that after indictment, the State "should not initiate a conversation with defendants without the consent of defense counsel." Id. at 277, 609 A.2d 400. In so holding, we noted that our state constitution guaranteed the right to counsel before the adoption of the Sixth Amendment and that New Jersey has provided counsel for indigent defendants since 1795. Id. at 274-75, 609 A.2d 400. We explained that "an indictment transforms the relationship between the State and the defendant" because "the State represents that it has sufficient evidence to establish a prima facie case." Id. at 276, 609 A.2d 400. We emphasized that from that point on, "[q]uestioning the accused can be only for the purpose of buttressing [] a prima facie case." Ibid. (quotations and citations omitted). Under those circumstances we concluded that Miranda warnings were insufficient to inform defendant of "the nature of the charges, the dangers of self-representation, or the steps counsel might take to protect the defendant's interests." Id. at 277, 609 A.2d 400. Thus, following indictment, the defendant may not waive his right to counsel without the advice of counsel. Ibid.
However, we declined to extend Sanchez's holding to an earlier stage in criminal proceedings, noting that to our knowledge no other jurisdiction "has applied the Sanchez principle to a stage earlier than the return of an indictment." State v. Tucker, 137 N.J. 259, 290, 645 A.2d 111 (1994). Nevertheless, we directed the Criminal Practice Committee to review our Court Rules "to determine whether amendments should be adopted that would require all defendants at first court appearances to indicate whether they are asserting their right to counsel or requesting the appointment of counsel." Id. at 291, 645 A.2d 111; see R. 3:4-2(C)(1), (2), (3) (requiring that court inform defendant of complaint, right to remain silent, and right to counsel); see also State v. A.G.D., 178 N.J. 56, 58, 65, 835 A.2d 291 (2003) (declining to extend Sanchez principle of non-waiver of Miranda warnings to period before indictment but after issuance of *447 arrest warrant or filing of criminal complaint).
In In re Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527, 554 (1967), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that "the [juvenile] and his parents must be notified of the [juvenile's] right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the [juvenile]." The Court acknowledged its traditional parens patriae role to protect children, but concluded that because juveniles can face loss of their physical liberty in juvenile proceedings, most of the protections afforded to adults facing similar losses of liberty should apply to juveniles. Id. at 30, 87 S.Ct. at 1445, 18 L.Ed.2d at 547-48.
Similarly, we have recognized that the State's predominate mission of rehabilitation of juvenile offenders has been augmented by punishment "as a component of the State's core mission with respect to juvenile offenders." State v. Presha, 163 N.J. 304, 314, 748 A.2d 1108 (2000). In Presha, we held that in the context of a seventeen-year-old's Fifth Amendment challenge to the admissibility of his confession given after Miranda warnings, "the absence of a parent or legal guardian from the interrogation area [is] a highly significant fact" in determining whether a juvenile's waiver of rights was knowing, intelligent and voluntary. Id. at 308, 748 A.2d 1108. Moreover, we determined that "a special circumstance exists when a juvenile is under the age of fourteen," and in such a case "the adult's absence [would] render the young offender's statement inadmissible as a matter of law, unless the parent or legal guardian is truly unavailable." Ibid.

B.
Following the United States Supreme Court's decision in Gault, our Legislature adopted the Code of Juvenile Justice. N.J.S.A. 2A:4A-20 to -49. Pursuant to the Code, a juvenile has the right "to be represented by counsel at every critical stage in the proceeding." N.J.S.A. 2A:4A-39a. Importantly, during the delinquency proceeding, a juvenile "may not waive any rights except in the presence of and after consultation with counsel, and unless a parent has first been afforded a reasonable opportunity to consult with the juvenile and the juvenile's counsel regarding [the] decision." N.J.S.A. 2A:4A-39b(1).
Defendant urges that we affirm the trial court's conclusion that the juvenile complaint prepared by the Prosecutor's Office was the substantial equivalent of an indictment and therefore, consistent with the principles espoused in Sanchez, defendant may not waive his Sixth Amendment right to counsel unless he is represented by counsel.[2]
We find no need to tackle that constitutional question because we are convinced that the Legislature has provided a statutory remedy. Under the Code, a juvenile is entitled to have "counsel at every critical stage of the proceeding which, in the opinion of the court may result in the institutional commitment of the juvenile." N.J.S.A. 2A:4A-39a. Thus, the question is whether the filing of the juvenile complaint by the Prosecutor's Office, followed by the issuance of a judicially approved arrest warrant, constitutes a "critical stage" such *448 that the statutory right to counsel is implicated.
A juvenile delinquency complaint may be filed by anyone, but when a crime is alleged in the complaint, the prosecutor's consent is needed before the court may divert the complaint. R. 5:20-1(c). Thus, the prosecutor plays a heightened role when it is alleged that the juvenile committed conduct that, if committed by an adult, would be a crime. Indeed, when the Prosecutor's Office files a juvenile complaint, it already has determined that it has a prima facie case against the defendant. Consequently, because the juvenile does not have the right to indictment, the filing of the complaint by the Prosecutor's Office takes on added significance. At that point, the prosecutor's role has evolved from investigative to accusatory.
In the present case, the Prosecutor's Office investigated the victim's complaint, and based on its investigation, filed the juvenile complaint and sought an arrest warrant. The State had developed a prima facie case against defendant and was clearly an adversary to defendant. Certainly, any further questioning of defendant was for the purpose of buttressing the State's case against him. We conclude that under those circumstances, the significant level of involvement by the Prosecutor's Office and the judicially approved arrest warrant satisfied the "critical stage in the proceeding" necessary to trigger defendant's statutory right to counsel under N.J.S.A. 2A:4A-39.
The next question is whether the juvenile may nevertheless waive his right to counsel without the presence of counsel. Again, the Legislature has provided the answer. N.J.S.A. 2A:4A-39 provides essentially the same safeguards to juveniles at every critical stage of the proceedings that Sanchez provides for adults following indictment. That is, just as adult defendants following indictment may not waive their Miranda rights absent counsel, see Sanchez, supra, 129 N.J. at 277, 609 A.2d 400, at every critical stage of the proceedings juveniles may not waive their Miranda rights "except in the presence of and after consultation with counsel." N.J.S.A. 2A:4A-39b(1). Consequently, in the absence of counsel, defendant could not waive his Miranda rights.
In summary, we conclude that when the Prosecutor's Office initiates a juvenile complaint and obtains a judicially approved arrest warrant, a critical stage in the proceeding has been reached, implicating the juvenile's statutory right to counsel. The State's questioning of defendant and the receipt of his statement in the absence of counsel at a critical stage in the proceeding violated defendant's statutory right to have counsel present before a valid waiver may be obtained. Consequently, the trial judge properly granted defendant's motion to suppress his statement.

IV.
Defendant also argues that the Prosecutor's Office circumvented the trial judge's order to produce the juvenile and did so for the purpose of obtaining a confession that it otherwise would have been prevented from obtaining. Because we conclude that defendant's right to counsel pursuant to N.J.S.A. 2A:4A-39 applies, we are not compelled to reach that argument. Nevertheless, we have carefully reviewed the transcript and find that the judge's suggestion to produce defendant in the morning was not an order that required the State to produce defendant before the judge at nine o' clock. Thus, if we were to find it necessary to reach that issue to resolve this matter, we would reject defendant's requested relief.

*449 V.
We reverse the judgment of the Appellate Division and remand for proceedings consistent with this opinion.
Justice RIVERA-SOTO, dissenting.
Because I would affirm the judgment in this case substantially for the reasons cogently and thoughtfully explained by Judge Lihotz in her opinion below, State in the Interest of P.M.P., 404 N.J.Super. 69, 960 A.2d 758 (App.Div.2008), I dissent. I add only the following.
The majority "conclude[s] that when the Prosecutor's Office initiates a juvenile complaint and obtains a judicially approved arrest warrant, a critical stage in the proceeding has been reached, implicating the juvenile's statutory right to counsel." Ante at 178, 975 A.2d at 448. That conclusion is unsupportable in two respects that are both additional to and separate from the persuasive reasoning of the appellate panel.
First, the majority's conclusion relies heavily on the fact that, in this case, it was the Prosecutor's Office that filed the juvenile delinquency complaint and sought defendant's detention. It is for that idiosyncratic reason that the majority concludes that "a critical stage in the proceeding ha[d] been reached[.]" By extension, then, if one ever so slightly tweaks the facts so that the complaint is filed by a law enforcement agency other than a prosecutor's office, the ensuing detention of a juvenile, standing alone, would notin the majority's iterationtrigger a critical stage in the proceedings. In those circumstances, according to the logic of the majority's reasoning, the automatic limitation on waiver of the right to counsel mandated by State v. Sanchez, 129 N.J. 261, 609 A.2d 400 (1992), would be inapplicable.
To impose so stringent a restriction on the fundamental right to waive counsel solely on the vagary of which law enforcement agency files the juvenile delinquency complaint is too arbitrary a distinction upon which to justify the majority's conclusion. The better, more realistic rule remains as the Appellate Division reasoned: that because "juvenile court proceedings are not `criminal [prosecutions,] but are exercises of the State's parens patriae jurisdiction in the interests of the juvenile[,]'" P.M.P., supra, 404 N.J.Super. at 77-78, 960 A.2d 758 (quoting In re State in the Interest of Steenback, 34 N.J. 89, 104, 167 A.2d 397 (1961)), and because "[t]he juvenile court is a civil one, within the Family Division" where "[t]he principal objective... is protective not punitive[,]" id. at 78, 960 A.2d 758 (citations omitted), the wholesale importation of criminal law concepts into juvenile delinquency matters is unwarranted. In short, the majority's approach is nothing more than the mixing of one's legal apples and oranges.
There is another independent ground that renders this case a particularly poor vehicle for the sweeping holding the majority adopts. When the juvenile complaint was filed[1] and defendant was detained *450 thereunder, he was twenty years old. Therefore, he no longer was a minor: he already was an adult. See N.J.S.A. 9:17B-3 (providing that, subject to limited exceptions inapplicable here, "every person 18 or more years of age shall in all other matters and for all other purposes be deemed to be an adult"). The sole reason law enforcement proceeded by way of a juvenile delinquency complaint is that the events for which defendant stood charged had occurred when he was still a minor. But, unlike a minor who commits an offense and is adjudicated a delinquent while still a minor, defendant already was an adult by the time his misdeeds caught up to him.[2] Ironically, had he committed his crimes only one or, at most, two years before he in fact was charged, he would have been charged as an adult and, because his uncounselled confession occurred before an indictment was returned, his waiver of the right to counsel would have been effective. It is only through a threadbare fiction that we treat this adult defendant as a juvenile, a fiction that is frayed even more by the awkward distinctions the majority today draws.
In sum, as the Appellate Division so aptly noted, the purposes of the juvenile justice system stand in stark contrast to those of the criminal justice system. Those fundamental differences make the importation of concepts unique to one into the other an ill-fitting enterprise. Also, tethering whether someone charged in a juvenile delinquency complaint may waive the presence of counsel before giving an otherwise perfectly admissible statement to the happenstance of which law enforcement agency filed the complaint is simply far too arbitrary for reasoned application and becomes a toothless tiger, a meaningless requirement that, in practice, is far too easily sidestepped.[3] Finally, granting this adult defendant a newly found protection to which he otherwise would not be entitled solely because he committed his offenses while still a juvenile defies basic common sense. For each of those reasons, severally and jointly, I dissent.
Justice HOENS joins in this opinion.
*451 For reversal and remandmentChief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN and WALLACE 5.
For affirmanceJustices RIVERA-SOTO and HOENS2.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Although defendant is alleged to have committed the offense when he was thirteen or fourteen, he was twenty years old when he was arrested. However, because this case concerns a juvenile delinquency complaint, the Juvenile Code and our Court Rules regarding juveniles apply to defendant.
[1] It is illuminating to reflect that the juvenile delinquency complaint charged defendant, when he was thirteen or fourteen years old, with raping a seven-year-old girl; specifically, he was charged with first-degree aggravated sexual assault by the use of physical force or coercion and severe personal injury is sustained by the victim, in violation of N.J.S.A. 2C:14-2(a)(6), and third-degree endangering the welfare of a child by engaging in sexual intercourse with a victim under the age of sixteen, in violation of N.J.S.A. 2C:24-4(a). Had those events occurred four or five years later, defendant would have been charged as an adult and he would have faced imprisonment on the rape charge "for a specific term of years which shall be fixed by the court and shall be between 10 years and 20 years[,]" N.J.S.A. 2C:43-6(a)(1), and, on the endangering charge, "for a specific term of years which shall be fixed by the court and shall be between three years and five years[,]" N.J.S.A. 2C:43-6(a)(3); the rape charge carried with it a presumption of incarceration. See N.J.S.A. 2C:44-1(d).
[2] Indeed, defendant was so much so an adult that he already was a party to a proceeding before the Family Part, in a Title 9 matter initiated by the Division of Youth and Family Services concerning defendant's then one-year-old son; custody of the infant had been awarded to defendant, something that never could have occurred if defendant had still been a minor subject to juvenile justice jurisdiction. That matter was pending before the same Family Part judge who authorized the issuance of the summons on the juvenile delinquency complaint.
[3] Given the majority's ruling, no doubt the law of unintended consequences will apply with a vengeance. Law enforcement officers would be well advised to steer clear of the Prosecutor's Office in juvenile delinquency matters involving an adult, on pain of having the juvenile delinquency complaint legally transformed into the functional equivalent of an indictment. In doing so, the judicial system as a whole will forfeit the salutary supervisory role the prosecutor's office brings into the mix. Also, law enforcement will be required to complete their investigation and questioning before filing a complaint, potentially placing others at risk, a point poignantly brought home in this case, where defendant was employed as a janitor in a school and, hence, could be in close contact with children. In a different vein, law enforcement would be justified in deferring the filing of a juvenile delinquency complaint against an adult, until after the adult is in custody and given the opportunity to waive his right to counsel and make a statement. That alternative similarly bypasses a level of judicial supervision we otherwise should be encouraging.