37 A.3d 534

STATE OF NEW JERSEY IN THE INTEREST OF A.C.

Superior Court of New Jersey
Appellate Division

Submitted January 18, 2012—Decided February 15, 2012.

Before Judges PAYNE, REISNER and HAYDEN.

*Michael Chazen* and *Marsha L. Levick* (The Juvenile Law Center) of the Pennsylvania bar, admitted pro hac vice, attorneys for appellant A.C. (*Mr. Chazen* and *Ms. Levick*, on the brief).

*Peter E. Warshaw, Jr.*, Monmouth County Prosecutor, attorney for State of New Jersey (*Mary R. Juliano*, Assistant Prosecutor, of counsel and on the brief).

*Jeffrey S. Chiesa*, Attorney General, attorney for amicus curiae Attorney General of New Jersey (*Brian Uzdavinis*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

REISNER, J.A.D.

By leave granted, A.C., a juvenile, appeals from the decision of the Family Part denying his application for a jury trial on charges that, if he were adjudicated as an adult, would constitute first-degree aggravated sexual assault, *N.J.S.A.* 2C:14-2a(1), and second-degree sexual assault, *N.J.S.A.* 2C:14-2b.[1] He contends that *N.J.S.A.* 2A:4A-40 is unconstitutional in denying juvenile offend-

---

[1] We initially denied A.C.'s motion for leave to appeal. However, by order filed June 30, 2011, the Supreme Court granted leave to appeal and remanded the case to this court for consideration on the merits.

ers the right to a jury trial.[2] In a thorough written opinion dated June 30, 2011, Judge Eugene Iadanza rejected that argument, after reviewing at length the history of our juvenile justice system and concluding that its primary goal continues to be rehabilitation. *See N.J.S.A.* 2A:4A–21. We affirm, substantially for the reasons stated in his opinion. We add the following comments.

■ As an intermediate appellate court, we are bound by the decisions of our Supreme Court in *State in the Interest of J.W.*, 57 *N.J.* 144, 145–46, 270 *A.*2d 273 (1970), and *In Re Registrant J.G.*, 169 *N.J.* 304, 338–39, 777 *A.*2d 891 (2001), and by the United States Supreme Court's decision in *McKeiver v. Pennsylvania*, 403 *U.S.* 528, 545, 91 *S.Ct.* 1976, 1986, 29 *L.Ed.*2d 647, 661 (1971), all of which hold that juveniles are not constitutionally entitled to a jury trial "in the juvenile court's adjudicative stage." *Ibid.; J.G., supra,* 169 *N.J.* at 338, 777 *A.*2d 891 (quoting *McKeiver*). *See also State ex rel. P.M.P.*, 200 *N.J.* 166, 174, 975 *A.*2d 441 (2009). In *J.G.*, the Court specifically reaffirmed that there are fundamental differences between this State's adult and juvenile adjudication systems. *J.G., supra,* 169 *N.J.* at 321–25, 777 *A.*2d 891. In fact, those differences underlay the *J.G.* Court's decision to limit Megan's Law registration as it applied to juveniles younger than fourteen, as a matter of statutory interpretation harmonizing Megan's Law with the New Jersey Code of Juvenile Justice (Juvenile Code).[3] *Id.* at 334–37, 777 *A.*2d 891. *See also State in*

---

[2] A.C.'s constitutional claims are rooted in the Sixth Amendment of the Unites States Constitution and Article 1, § 10 of the New Jersey Constitution, both of which guarantee the right to a jury trial in "criminal prosecutions." *U.S. Const.* amend. VI; *N.J. Const.* art. 1. By statute, juvenile dispositions are not criminal convictions and a juvenile adjudicated delinquent is not "deemed a criminal." *N.J.S.A.* 2A:4A–48.

[3] Megan's Law is codified at *N.J.S.A.* 2C:7–1 to –23. In addition to sex offender registration and public notification, the statute provides for public internet access to information about sex offenders. *N.J.S.A.* 2C:7–12. However the internet information excludes juveniles unless they are repeat or high-risk offenders. *N.J.S.A.* 2C:7–12, –13(b), (d)(1).

*the Interest of C.V.*, 201 *N.J.* 281, 294–97, 990 *A.2d* 640 (2010) (discussing the "stated rehabilitative goals" of the Juvenile Code).

Significantly, in his reply brief, A.C. eschews the statutory right that he does have to elect waiver of his case to adult court, where he would have the right to a jury trial. *N.J.S.A.* 2A:4A-27, -28. As he phrases it, choosing trial as an adult would "up the stakes" from four years in a juvenile facility to twenty years in prison. *See N.J.S.A.* 2A:4A-44d(1)(c); *N.J.S.A.* 2C:43–6a(1). That starkly illustrates an important distinction between the adult and juvenile justice systems. *See R.* 5:24–5(a) (at any time during a juvenile's term of incarceration, the Family Part judge may reconsider and "substitute any other" available disposition); *R.* 3:21–10(a) and (b) (severely limiting the criminal court's authority to reduce an adult sentence).

Although A.C. argues that the Juvenile Code is now so similar to the adult Criminal Code as to require jury trials for juveniles, a contention we reject, he also argues that the application of Megan's Law to juvenile offenders triggers a constitutional jury trial right for juveniles charged with sex offenses. A.C.'s constitutional arguments, however, are at odds with the Supreme Court's holding in *Doe v. Poritz*, 142 *N.J.* 1, 12–13, 662 *A.2d* 367 (1995), that Megan's Law is not a criminal statute and sex offender registration is not "punishment." In *J.G.*, the Court extended that holding to Megan's Law as applied to juvenile offenders, although it limited the registration requirement somewhat as a matter of statutory construction. *J.G.*, *supra*, 169 *N.J.* at 334–35, 338–39, 777 *A.2d* 891. Again, we are bound by the Court's holdings in *Doe* and *J.G.*

In his brief, A.C. cites several scholarly articles documenting what A.C. contends are unintended, counterproductive results of applying Megan's Law to juvenile offenders. In particular, these articles discuss the barriers that lifetime registration may pose to a juvenile's chances at rehabilitation and a normal life. *See, e.g.*, Timothy E. Wind, *The Quandary of Megan's Law: When the Child Sex Offender is a Child*, 37 *J. Marshall L.Rev.* 73 (2003);

Patricia Coffey, *The Public Registration of Juvenile Sex Offenders, Association for the Treatment of Sexual Abusers Forum,* Vol. XIX, No. 1 (Winter 2007). These concerns may well merit the Legislature's further consideration. However, whether Megan's Law should apply to juveniles, either at all or in the manner that it currently does, is a policy decision to be addressed by the Legislature. *See J.G., supra,* 169 *N.J.* at 327–30, 777 *A.*2d 891 (reviewing the different ways in which other states apply registration requirements to juvenile offenders).

Affirmed.