44 A.3d 615 (2012)
426 N.J. Super. 321
STATE of New Jersey, Plaintiff-Appellant,
v.
Ryan L. HODGE, Defendant-Respondent.
Docket No. A-5961-10T1.
Superior Court of New Jersey, Appellate Division.
Submitted December 21, 2011.
Decided May 15, 2012.
*617 Warren W. Faulk, Camden County Prosecutor, attorney for appellant (Christine Shah, Assistant Prosecutor, of counsel and on the brief).
Joseph E. Krakora, Public Defender, attorney for respondent (Timothy P. Reilly, Designated Counsel, on the brief).
Before Judges AXELRAD, SAPP-PETERSON and OSTRER.
The opinion of the court was delivered by
SAPP-PETERSON, J.A.D.
In this appeal, we granted leave to the State for our interlocutory consideration of the trial court's order suppressing a statement taken from defendant shortly after his arrest for murder. At the time defendant gave the statement, he was eighteen days shy of his seventeenth birthday. The statement was taken from the juvenile defendant without an attorney being present or defendant having the opportunity to consult with counsel prior to making the statement. Nor was defendant's grandmother, his legal guardian, present at the time the statement was taken, although she gave police permission to interview defendant. The State sought to have the statement admitted for impeachment purposes, in anticipation of defendant's assertion of a claim of self-defense *618 to the murder charge. In denying the State's motion to admit the statement, the trial court accorded pipeline retroactivity to the Supreme Court's holding in State in the Interest of P.M.P., 200 N.J. 166, 975 A.2d 441 (2009), that a juvenile, against whom a formal complaint has been lodged and for whom a judicially approved arrest warrant has been issued, cannot waive his Miranda[1] rights in the absence of an attorney and without first having the opportunity to consult with counsel. On appeal, the State urges that P.M.P. be applied prospectively only.
We hold: (1) P.M.P. announced a new rule; (2) its purpose is not furthered by retroactive application; (3) law enforcement officials, in good faith, have relied upon the old rule in conducting custodial interrogations of juveniles; and (4) without doubt, retroactive application would have a significant impact upon the administration of justice. We therefore reverse and remand.
On February 24, 2010, a grand jury returned a four-count indictment charging defendant with first-degree murder, N.J.S.A. 2C:11-3a(1) or (2) (Count One); second-degree possession of a weapon (handgun) for an unlawful purpose, N.J.S.A. 2C:39-4a (Count Two); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b (Count Three); and third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2a (Count Four). On March 31, 2011, nearly two years after providing his statement and over one year following indictment, the defense filed a Notice of Defense, "including, but not limited to, the defense of [s]elf-defense."
The State filed a pretrial motion to admit defendant's statement, in anticipation of the self-defense theory. At the hearing, the State presented one witness, Captain Arthur Folks, who although retired at the time of the hearing, headed the Operations Division within the Camden County Prosecutor's Office at the relevant time period. Upon completion of his cross-examination, the court raised the question of the applicability of P.M.P. to defendant's case. The court adjourned the hearing to afford counsel an opportunity to brief the issue. The court conducted oral argument two weeks later and, immediately upon its conclusion, rendered an oral opinion denying the State's motion to admit the statement:
I think that I find that in this situation[,] I think the factors weigh in favor of the defendant. I think the defendant was entitled at that point to have an attorney represent him, to tell him what it meant to waive [his] right to counsel and make sure that he understood that. I find that clearly the purpose of the rule and whether it would be furthered by retroactive application is furthered by limited retroactive application in this case and that is that the case was in the pipeline.
Thereafter, the court stayed the proceedings pending the State's application for appellate review. By order dated August 11, 2011, we granted the State's motion for leave to appeal the trial court's interlocutory ruling.

I.
According to Captain Folks' testimony at the hearing, on April 24, 2009, both Tyson Maddox and Gerard Caugham attended a barbecue held on MacArthur[2] Street in Camden, where defendant was also in attendance. During the party, Maddox spoke with a seventeen-year-old female guest. By 10:25 p.m., defendant *619 had left the barbecue and was outside talking to the same female guest with whom Maddox had earlier been speaking. When Maddox drove past in his vehicle, defendant called him a "faggot." Maddox exited his vehicle and a fistfight erupted between the two men. Defendant pulled out a gun and shot Maddox five times in the chest. Maddox died from his wounds. On April 28, 2009, defendant was charged with murder in a juvenile complaint. On May 7, 2009, defendant was arrested by the Camden County Sheriff's Department. The arrest represented defendant's fourteenth arrest as a juvenile in the five years since he had turned twelve years old.
The sheriff's officers transported defendant to the Camden County Prosecutor's Office, where he told homicide investigators that his legal guardian was his grandmother. He provided information where she might be located. Captain Folks met defendant's grandmother at defendant's aunt's home and advised her that defendant had been arrested and charged with murder. He invited her to come to the Prosecutor's Office, but she declined to do so. However, she gave the investigators permission to speak with defendant and signed a handwritten note[3] that stated:
I[,] Brenda Sweetenberg[,] gave permission for Law Enforcement CCPO/CPO officers to speak/interview [g]randson Ryan Hodge regarding the 4-24-09 homicide of Tyson Maddox[,] 5:15 PM, Thursday, 5-7-09. Location of interview[:]... Camden, N.J. (Juvenile)[.] She is legal guardian[.] His location was not revealed to police by her. Brenda Sweetenberg[.] Lt. A. Folks.[[4]]
After obtaining permission to speak to defendant, Sergeant Ronald Moten advised defendant of his Miranda rights, using the "Juvenile Statement of Rights" form. Defendant waived his Miranda rights and executed the waiver in writing. Defendant told the investigating officers that he had not been at the party, denied knowing the victim, and also denied any knowledge of the victim's death.
On July 16, 2009, defendant voluntarily waived jurisdiction from the Chancery Division, Family Part, to the Criminal Division, "Adult Court." On July 29, 2009, nearly three months after defendant provided his statement, the Court issued its opinion in P.M.P.

II.
The initial question to be resolved is whether the Court's decision in P.M.P. announced a new rule of law. State v. Feal, 194 N.J. 293, 307, 944 A.2d 599 (2008). We hold that it did. "A case announces a new rule of law for retroactivity purposes if there is a sudden and generally unanticipated repudiation of a long-standing practice." Id. at 308, 944 A.2d 599 (internal quotation omitted). "A rule of law is new if it `breaks new ground' and is one whose `result was not dictated by precedent existing at the time the defendant's conviction became final.'" State v. Gaitan, 209 N.J. 339, 365, 37 A.3d 1089 (2012) (quoting Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334, 349 (1989)).
The Court decided P.M.P. based upon its interpretation of the Code of Juvenile Justice (Code), N.J.S.A. 2A:4A-20 to -49, rather than upon constitutional grounds. Under Section 39(a) of the Code, a juvenile is entitled to counsel at every critical stage of a juvenile proceeding. The P.M.P. *620 Court concluded that the "filing of [a] juvenile complaint by the Prosecutor's Office, followed by the issuance of a judicially approved arrest warrant, constitutes a `critical stage' such that the statutory right to counsel is implicated." P.M.P., supra, 200 N.J. at 177-78, 975 A.2d 441. Prior to P.M.P., the filing of a formal juvenile complaint did not trigger the right to an attorney's presence before initiating a custodial interrogation of a juvenile. Rather, such interrogations only triggered the right to the presence of a parent or legal guardian during interrogation, whenever possible, to assist the juvenile in understanding his or her Miranda rights, intelligently waiving them, and helping the juvenile stay calm in the face of an interrogation. State v. Presha, 163 N.J. 304, 315, 748 A.2d 1108 (2000).
The decision in Presha had represented the Court's most recent iteration of the longstanding rule that "`[w]henever possible... no child should be interviewed except in the presence of his parents or guardian.'" In re Carlo, 48 N.J. 224, 241, 225 A.2d 110 (1966) (quoting Standards for Specialized Courts Dealing with Children, Children's Bureau, Department of Health, Education and Welfare, 1954, at 39). See also In re S.H., 61 N.J. 108, 114, 293 A.2d 181 (1972) (holding that the custodial interrogation of a juvenile suspected of committing an offense, which if committed by an adult would constitute murder or manslaughter, "without the presence of his parents or someone to whom the boy can turn for support is likely to have harmful effects on his mind and will"). The Court in Presha reaffirmed the necessity for the presence of a parent or guardian during custodial interrogations of juveniles:
In view of the changing realities of the juvenile process and the important rights at stake, we reaffirm our belief that a parent or legal guardian should be present in the interrogation room, whenever possible. In respect of confessions by juveniles of any age, courts should consider the adult's absence as a highly significant factor among all other facts and circumstances. By highly significant factor we mean that courts should give that factor added weight when balancing it against all other factors. By elevating the significance of the adult's role in the overall balance, we are satisfied that the rights of juveniles will be protected in a manner consistent with constitutional guarantees and modern realities.
....
Regardless of the juvenile's age, police officers must use their best efforts to locate a parent or legal guardian before beginning the interrogation....
... [W]hen an adult is unavailable or declines to accompany the juvenile, the police must conduct the interrogation with the utmost fairness and in accordance with the highest standards of due process and fundamental fairness. That requirement, too, has been a common thread in our jurisprudence and is reaffirmed today.
[Presha, supra, 163 N.J. at 315-17, 748 A.2d 1108 (emphasis added) (internal quotations and citations omitted).]
Thus, attempting, whenever possible, to secure the presence of a parent or guardian prior to any custodial interrogation of a juvenile had been the rule of law for more than forty-three years before P.M.P. was decided.
In the brief submitted on defendant's behalf, it is urged that "the right to counsel attaches at the initiation of adversarial judicial criminal proceedings against the defendant." In essence, defendant advances a Sixth Amendment right to counsel analysis as a basis to contend P.M.P. does not create a new rule of law. Defendant *621 cites United States v. Gouveia, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), to support this contention. In addition, defendant cites In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), for the proposition that the Due Process Clause of the Fourteenth Amendment requires that "the [juvenile] and his parents must be notified of the [juvenile]'s right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the [juvenile]." Id. at 41, 87 S.Ct. at 1451, 18 L.Ed.2d at 554.
Gouveia, however, does not stand for the proposition that the right to counsel attaches at the "initiation of criminal proceedings against the defendant." Rather, Gouveia holds: "`[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him.'" Gouveia, supra, 467 U.S. at 187, 104 S.Ct. at 2297, 81 L.Ed.2d at 154 (emphasis added) (quoting Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972)). Thus, the right to counsel is not triggered by any criminal proceeding but only in "adversary judicial proceedings." Ibid. Likewise, the Gault Court made clear that

we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. ... We consider only the problems presented to us by this case. These relate to the proceedings by which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution. As to these proceedings, there appears to be little current dissent from the proposition that the Due Process Clause has a role to play.... The problem is to ascertain the precise impact of the due process requirement upon such proceedings.
[Gault, supra, 387 U.S. at 13, 87 S.Ct. at 1436, 18 L.Ed.2d at 538 (emphasis added)].
Both Gouveia and Gault are therefore consistent with federal law that the right to counsel is triggered when adversary judicial proceedings have been instituted. Kirby, supra, 406 U.S. at 688, 92 S.Ct. at 1881, 32 L.Ed.2d at 417. The United States Supreme Court, however, has not "articulated an all-inclusive list" of every criminal proceeding or process that "definitively transform[s] the government from investigator to adversary for purposes of implicating the right to counsel." State v. A.G.D., 178 N.J. 56, 63, 835 A.2d 291 (2003) (citing United States ex rel. Hall v. Lane, 804 F.2d 79, 82 (7th Cir.1986), cert. denied, 480 U.S. 921, 107 S.Ct. 1382, 94 L.Ed.2d 696 (1987)).
Notwithstanding, our Court, based upon Article 1, paragraph 10, of the New Jersey Constitution, has determined that "[a]s a general rule, after an indictment and before arraignment, prosecutors or their representatives should not initiate a conversation with defendants without the consent of defense counsel." State v. Sanchez, 129 N.J. 261, 277, 609 A.2d 400 (1992).[5]
*622 In State v. Tucker, 137 N.J. 259, 289-90, 645 A.2d 111 (1994), cert. denied, 513 U.S. 1090, 115 S.Ct. 751, 130 L.Ed.2d 651 (1995), however, decided two years after Sanchez, the Court rejected defendant's contention that Sanchez should be extended to prohibit police-initiated custodial interrogations from the time a defendant makes his or her first appearance following the filing of a complaint:
We readily acknowledge that the principle underlying our holding in Sanchez could logically be extended to apply to an earlier stage of criminal proceedings. Defendant argues that Sanchez should apply from the first court appearance following the filing of the complaint, noting that that event signals the initiation of adversary judicial proceedings and thus the attachment of the Sixth Amendment right to counsel. No one can dispute, however, that at the time of the first court appearance the State's investigative effort generally is at a preliminary stage, and the police may still be attempting, as in this case, to solve the crime. We also are well aware that at the time of the first appearance the State's decision to prosecute has not solidified.
[Id. at 289-90, 645 A.2d 111 (internal citations and quotation omitted).]
Nine years later, the Court was asked to extend the holding in Sanchez to a custodial interrogation occurring prior to indictment but after an arrest warrant had been issued. The Court declined to do so. A.G.D., supra, 178 N.J. at 66, 835 A.2d 291.
Against this historical backdrop of decisions leading up to P.M.P., it is clear that defendant's reliance upon Gouveia and In re Gault to urge that P.M.P. did not announce a new rule of law is misplaced. Whether analyzed under the Fifth or Sixth Amendments, no court has previously held that after the filing of a complaint or the issuance of an arrest warrant, custodial interrogations of juveniles trigger the right to counsel and the requirement that counsel be present before questioning. Therefore, prior to P.M.P., as long as law enforcement officials, in good faith, attempted to secure the presence of a parent or legal guardian in advance of any custodial interrogation of a juvenile,[6] the statement was admitted into evidence, provided the State otherwise met its burden of proof as to the knowing and voluntary waiver of the juvenile's Miranda rights. Presha, supra, 163 N.J. at 315, 748 A.2d 1108.
In P.M.P., the Court viewed the filing of a juvenile complaint by the Prosecutor's Office, followed by the issuance of a judicially approved arrest warrant, as the functional equivalent of an indictment to which the right to counsel for an adult attaches. The Court noted that our Legislature has granted to juveniles "`[a]ll defenses available to an adult charged with a crime'"; and, "except for the right to indictment, the right to trial by jury, and the right to bail[,]" juveniles have been granted all rights guaranteed to adult defendants under both the federal and state constitutions. P.M.P., supra, 200 N.J. at 173-74, 975 A.2d 441 (quoting N.J.S.A. 2A:4A-40). As such, the Court concluded:
[W]hen the Prosecutor's Office initiates a juvenile complaint and obtains a judicially approved arrest warrant, a critical *623 stage in the proceeding has been reached, implicating the juvenile's statutory right to counsel. The State's questioning of defendant and the receipt of his statement in the absence of counsel at a critical stage in the proceeding violated defendant's statutory right to have counsel present before a valid waiver may be obtained.
[Id. at 178, 975 A.2d 441.]
Although decided on statutory grounds, P.M.P. nonetheless represented a departure from existing case law and created a new rule for the custodial interrogation of juvenile suspects under similar circumstances.[7]

III.
The next inquiry is to determine how the new rule announced in P.M.P. is to be applied. When confronted with the application of a new rule, four options have been recognized as appropriate for consideration:
(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted.
[State v. Burstein, 85 N.J. 394, 402-03, 427 A.2d 525 (1981) (citing State v. Nash, 64 N.J. 464, 468-70, 317 A.2d 689 (1974))].
In determining which option is appropriate, our Court has delineated three factors courts must consider and weigh: "(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice." Feal, supra, 194 N.J. at 308, 944 A.2d 599 (internal quotation omitted).
The purpose factor is often the pivotal factor. Burstein, supra, 85 N.J. at 406, 427 A.2d 525. If the sole purpose is to deter police conduct, the new rule is rarely given retroactive effect. Ibid.; State v. J.A., 398 N.J.Super. 511, 520, 942 A.2d 149 (App.Div.), certif. denied, 196 N.J. 462, 957 A.2d 1171 (2008). On the other hand, if the new rule's objective is directed to an aspect of a criminal trial that threatens the integrity of a trial's "truth-finding function" and raises "serious question[s] about the accuracy of guilty verdicts in past trials," then complete retroactive application of the new rule is warranted. Feal, supra, 194 N.J. at 308-09, 944 A.2d 599 (internal quotation omitted).
Turning to the "degree of reliance" consideration, this factor focuses upon the State's good faith reliance upon the then-prevailing norms in administering *624 the rule. Thus, a logical consideration under this prong was how long law enforcement officials operated under prior precedent. Presumably, if the record establishes that the State, in its enforcement actions, has relied upon prior established precedent, particularly where that precedent has not been called into question, it should not be penalized with the retroactive application of a new rule. See State v. Catania, 85 N.J. 418, 447-48, 427 A.2d 537 (1981) (finding retroactive application unwarranted because police had justifiably relied upon an old practice sanctioned by rule and statute).
The final inquiry focuses upon evidence demonstrating the kind of impact retroactive application of the new rule will have upon the administration of justice. Courts should look to data produced to determine the extent to which, if any, the administration of justice will be impacted. The longer the prior rule has been in effect, however, the less likely there will be a need for such data because significant impact upon the administration of justice may be presumed. State v. Henderson, 208 N.J. 208, 302, 27 A.3d 872 (2011). Conversely, where administration of justice under the prior rule has not had an extensive history and the data has not been presented, at the very least, the new rule should be accorded "limited" or "pipeline" retroactivity, that is, applied to cases pending direct review. Feal, supra, 194 N.J. at 311-12, 944 A.2d 599.
With the aforementioned principles to guide us, we are satisfied the trial court erred in concluding P.M.P. should be accorded "pipeline retroactivity." We initially note that technically, defendant's case is not a pipeline case, as it was not pending direct review at the time P.M.P. was decided. Ibid. Assuming defendant's case was pending direct review at the time P.M.P. was decided, for the reasons expressed infra, we nonetheless conclude pipeline retroactivity of the new rule would not be appropriate.
Addressing the purpose factor, the new rule announced in P.M.P. discourages the custodial interrogation of unrepresented juveniles, thereby substantially reducing the risk of juveniles giving uncounseled statements. P.M.P., supra, 200 N.J. at 176-77, 975 A.2d 441. It does not replace an old rule that substantially impaired the truth-finding process, nor does it raise serious questions about the accuracy of guilty verdicts in past trials. Feal, supra, 194 N.J. at 311-12, 944 A.2d 599. As such, complete retroactivity is not warranted. Burstein, supra, 85 N.J. at 406-07, 427 A.2d 525.
Next, as discussed earlier, at the time defendant was questioned, Presha and earlier decisions upon which Presha relied in prescribing the standards that should govern custodial interrogations of juveniles had been the law of this state and of the land for more than forty-three years. Presha, supra, 163 N.J. at 313-16, 748 A.2d 1108. See also State ex rel. Q.N., 179 N.J. 165, 172, 843 A.2d 1140 (2004) (where the parties agreed that the standards governing juvenile confessions were established by Presha); A.G.D., supra, 178 N.J. at 66-68, 835 A.2d 291 (reiterating the discussion in Presha of the necessity for an added layer of protection for juveniles under the age of fourteen in custodial interrogations). Law enforcement officers having justifiably relied upon the old rule sanctioned by our Court should not be penalized with retroactive application of the rule. Catania, supra, 85 N.J. at 447, 427 A.2d 537.
*625 Finally, as to whether retroactive application of P.M.P. would disrupt the administration of justice, neither side presented any empirical data reflecting the impact retroactive application of P.M.P. would have upon the administration of justice. The general rule, however, disfavors retroactive application of laws that would (1) impact many cases, Feal, supra, 194 N.J. at 311, 944 A.2d 599, or (2) undermine the validity of large numbers of convictions, State v. Knight, 145 N.J. 233, 252, 678 A.2d 642 (1996). It is beyond dispute that the State and courts, for more than forty-three years, have relied, in good faith, upon precedents established in earlier cases in determining the admissibility of custodial interrogations of juveniles. We are therefore convinced, without the necessity of such empirical data, the new number of cases that would be impacted by the retroactive application rule, either completely or limited to those cases pending direct review, would be significant. Henderson, supra, 208 N.J. at 302, 27 A.3d 872 (noting that retroactive application of the new framework for challenging eyewitness identification "would affect an immense number of casesfar too many to tallybecause eyewitness identifications are a staple of criminal trials").
To summarize, we conclude the purpose of the new rule is not to "overcome some aspect of the criminal trial that substantially impairs the truth-finding function" and it does not raise "serious question[s] about the accuracy of guilty verdicts in past trials." Feal, supra, 194 N.J. at 308-09, 944 A.2d 599. Additionally, the State's good faith reliance upon the old rule has been longstanding. Law enforcement officials, who for more than forty-three years have relied upon the old rule requiring the presence of a parent or legal guardian, whenever possible, during custodial interrogations of juveniles, and who, for more than ten years, have operated under the parameters of the old rule as expounded upon in Presha, should not be penalized with the retroactive application of P.M.P. Catania, supra, 85 N.J. at 447, 427 A.2d 537. Finally, we anticipate that the effect retroactive application would have upon the administration of justice would be significant, due to the number of new trial demands that would be filed as a result of retroactive application of the new rule.
We conclude, therefore, that the holding in P.M.P. is to be applied prospectively. In reaching this conclusion, however, we make no determination whether exclusion of defendant's statement may be appropriate on other grounds, as the issue of the knowing and voluntary waiver of defendant's right to remain silent is not before us.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Also spelled McArthur in the appellate record.
[3] Captain Folks actually wrote the note that defendant's grandmother then signed.
[4] The copy of the note included in the appendix appears to include a word before "Lt." but the page is cut off.
[5] Sanchez departed from the United States Supreme Court's holding in Patterson v. Illinois, 487 U.S. 285, 290-300, 108 S.Ct. 2389, 2393-99, 101 L.Ed.2d 261, 271-77 (1988), finding that the Sixth Amendment did not prohibit police from initiating post-indictment questioning of an accused who has not had the benefit of advice of counsel.
[6] Custodial interrogations of juveniles under the age of fourteen in the absence of a legal guardian or parent are deemed inadmissible as a matter of law unless the adult was unwilling to be present or truly unavailable. Presha, supra, 163 N.J. at 315, 748 A.2d 1108.
[7] We do not read P.M.P. as extending its holding to all offenses committed by juveniles but only to those offenses which, if committed by an adult, would constitute a crime and for which a complaint has been filed, followed by issuance of a judicially approved arrest warrant.