RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0303-16T2
 APPROVED FOR PUBLICATION

STATE OF NEW JERSEY June 19, 2017
IN THE INTEREST OF
M.P. APPELLATE DIVISION
_________________________________________

 Argued May 9, 2017 – Decided June 19, 2017

 Before Judges Messano, Espinosa and Grall.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part,
 Middlesex County, Docket No. FJ-12-1625-16.

 Patrick C. O'Hara, Jr., argued the cause for
 appellant M.P. (Del Vacchio O'Hara, P.C.,
 attorneys; Mr. O'Hara, on the brief).

 Christopher L.C. Kuberiet, First Assistant
 Prosecutor, argued the cause for respondent
 State of New Jersey (Andrew C. Carey,
 Middlesex County Prosecutor, attorney; Mr.
 Kuberiet, on the brief).

 The opinion of the court was delivered by

MESSANO, P.J.A.D.

 The State of New Jersey charged juvenile M.P. with conduct

which, if committed by an adult, would constitute second-degree

aggravated assault, N.J.S.A. 2C:12-1(b), and fourth-degree
unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).1 M.P.

appeared with counsel before a Family Part judge in Middlesex

County for a preliminary hearing and subsequent detention

hearing.

 Several days later, a probation officer requested the

prosecutor provide a copy of the police report because the

matter was being transferred to another vicinage. Apparently,

without notice to M.P.'s counsel or any further notice to the

prosecutor, the Presiding Judge of the Family Part (PJ) filed an

order transferring the matter to Somerset County.

 The State moved to vacate the order. The prosecutor's

certification asserted that court staff provided only "a cryptic

reference to employee conflict." The prosecutor noted there had

been no contact with the victim of the alleged assault before

the transfer, in violation of the Crime Victim's Bill of Rights,

N.J.S.A. 52:4B-34 to -38. The prosecutor also referenced prior

juvenile matters involving M.P. for which venue was not

1
 The complaint fails to state which specific subsection of
N.J.S.A. 2C:12-1(b) the juvenile allegedly violated. The
language of the complaint suggests N.J.S.A. 2C:12-1(b)(1)
(causing or attempting to cause serious bodily injury (SBI)).
This is consistent with the State's representations at oral
argument that it will seek waiver of the Family Part's
jurisdiction to pursue prosecution in the Criminal Division.
See N.J.S.A. 2A:4A-26.1(c)(2)(g) (permitting waiver for second-
degree aggravated assaults).

 2 A-0303-16T2
transferred, and stated, on "information and belief," M.P.

objected to the transfer.

 The parties appeared before the PJ for oral argument on the

State's motion. The prosecutor argued the State received no

explanation for the transfer of venue, which was not authorized

by statute or Court Rule. He stated the sole authority for the

transfer was N.J. Administrative Office of the Courts, Judiciary

Employee Policy #5-15, "Reporting Involvement in Litigation,"

(effective June 1, 2016) (the Policy). He further contended the

Policy permitted only the Assignment Judge (AJ) to transfer

venue. The prosecutor cited extensively to two of our

unpublished opinions and argued the transfer created hardships

for law enforcement and the alleged victim.

 Defense counsel, who had represented M.P. since 2012, also

noted her objection to the transfer of venue. Counsel explained

that the juvenile's mother became "frantic" upon hearing of the

transfer, noting she and her son lived in Middlesex County, she

had a two-week old child and she could not "go back and forth to

Somerset County." Counsel further stated that the mother's

child support matter was initially transferred to Somerset

County, but that order was revoked after M.P.'s mother objected.

Defense counsel requested the judge hold a hearing to determine

 3 A-0303-16T2
"if there is some way we can shield the [court] person from any

involvement with [M.P.'s] case."

 The judge stated "that any lack of . . . communication"

regarding the transfer order was "not a matter of design." She

cited Rule 1:33-6(d) as providing authority for a PJ to enter

the transfer order. The judge explained that she followed the

Policy after receiving the confidential report of an employee,

and noted the Policy "insure[s] the continued integrity of the

judiciary in avoiding any actual [or] potential . . . appearance

of partiality or conflict of interest." The judge reserved

decision and subsequently filed the July 29, 2016 order denying

the State's motion.

 In a written statement of reasons accompanying the order,

the judge explained a judiciary employee in the vicinage's Trial

Court Services Division submitted a confidential "Personal or

Family Member Involvement in Litigation form" to the Trial Court

Administrator (TCA). Citing various provisions of the Policy,

which we discuss in greater detail below, the judge stated she

and the TCA determined a transfer of venue was necessary "to

avoid any appearance of impropriety."

 The judge explained the judiciary employee had access to

the Family Automated Case Tracking System (FACTS), which

permitted him or her to view information, including information

 4 A-0303-16T2
that was confidential pursuant to N.J.S.A. 2A:4A-60. The judge

explained:

 The Judiciary employee's function is to
 assist court users by providing information
 and assistance with court processes,
 handling court user complaints and
 inquiries, and providing information from
 court files, as appropriate. In that
 regard, consideration of preventative
 measures to ensure insulation or isolation
 of this employee would substantially impact
 the employee's functionality. Specifically,
 the employee's need to regularly access
 FACTS to perform his/her job prohibits
 restriction of FACTS access as a means to
 insulate the individual. Additionally,
 consideration of relocating the employee to
 an area removed from the Middlesex Family
 Courthouse, wherein a substantial segment of
 the public seeks access to the employee's
 services, would significantly hinder the
 access to and delivery of services by the
 Judiciary to the public.

The judge distinguished one of the unpublished decisions cited

by the prosecutor, noting it was a criminal case and

"distinguishable from a juvenile delinquency case in that it

does not implicate statutory confidentiality restrictions."

 Lastly, the judge explained

 procedural safeguards ordinarily attendant
 to adversarial proceedings are not employed
 in the area of administrative transfers as
 it is the Court that is vested with the
 authority and responsibility to maintain a
 high degree of integrity and to avoid any
 actual, potential or appearance of
 partiality or conflict of interest in the
 adjudication or handling of all cases.

 5 A-0303-16T2
The judge concluded transferring venue in this matter was

consistent with the Policy.

 We granted M.P.'s motion for leave to appeal, which the

State supported. In the interim, on September 5, 2016, M.P. was

charged in another complaint with conduct which, if committed by

an adult, would constitute fourth-degree riot, N.J.S.A. 2C:33-

1(a)(1), and the disorderly persons offense of simple assault,

N.J.S.A. 2C:12-1(a). Without notice to the State or defense

counsel, the PJ entered an order on September 22 transferring

venue for the second complaint to Somerset County. No further

hearing occurred prior to entry of the order, and no statement

of reasons accompanied it.

 We granted M.P.'s motion to expand the record to include

the September 22, 2016 order. The State did not object.

 Counsel advised us at oral argument that M.P. has now been

charged with additional offense(s) as an adult, since he has

turned eighteen. As of the date of the argument, venue in that

matter had not been transferred. The prosecutor also indicated

the State continues to seek waiver of the initial juvenile

complaint to the Law Division.

 M.P. argues the judge mistakenly exercised her discretion

by transferring venue over his objection. He contends that

pursuant to the Policy, only the AJ can order a transfer of

 6 A-0303-16T2
venue, and, in this case, there was no indication the AJ had

delegated that responsibility to the PJ. He further argues the

PJ failed to consider his objection to the transfer, or N.J.S.A.

2A:4A-27, which provides, "[a]ny juvenile [fourteen] years of

age or older charged with delinquency may elect to have the case

transferred to the appropriate court having jurisdiction." M.P.

urges us to summarily reverse the orders under review. The

State agrees with M.P.'s position and reiterates the arguments

it raised in the Family Part.

 We now reverse and remand the matter for further

proceedings consistent with this opinion.

 I.

 We begin by recognizing our Court Rules express a strong

presumption that venue shall lie in the county of a juvenile

defendant's domicile. Rule 5:19-1(a)(1) provides:

 Juvenile delinquency complaints are filed in
 the county where the incident giving rise to
 the complaint allegedly occurred. However,
 when the juvenile charged is domiciled in a
 county other than the county of the alleged
 occurrence, venue shall be laid in the
 county of the juvenile's domicile unless the
 court finds good cause for venue to be
 retained in the county where the incident
 allegedly occurred.

 [(Emphasis added).]

The Rule also provides that, "[i]f there are multiple

defendants, juvenile or adult," the Family Part must

 7 A-0303-16T2
"immediately notify the county prosecutor and any attorney of

record of an intent to transfer the juvenile matter to the

county of domicile." R. 5:19-1(a)(2) (emphasis added). "Any

objection to the transfer of venue . . . shall be made . . .

within five days of such notice." Ibid.

 When the Rule was last amended in 2006, the Supreme Court

Family Practice Committee explained that under the pre-amendment

Rule, venue in multiple defendant cases was laid in the county

where the incident occurred. The Supreme Court Family Practice

Committee, Family Practice Committee 2004-2007 Final Report 138

(Jan. 12, 2007)

http://www.njcourts.gov/courts/assets/supreme/reports/2007/

family 2007.pdf (The Report). This raised concerns "because

the information most useful to the Family Part judge assigned to

hear the juvenile delinquency case was uniquely available in the

juvenile's county of domicile." Ibid. (emphasis added).

 Rule 5:19-1(b) provides:

 Except when venue has been established by a
 court pursuant to an objection raised in
 paragraph (a)(2), a motion for change of
 venue may be made at any time. Such motion
 shall be made to the Family [PJ] or designee
 in the county where the matter is currently
 venued on notice to the other party. Venue
 shall be retained unless the court

 8 A-0303-16T2
 determines that good cause exists to change
 venue.2

The Committee succinctly summarized the Rule as amended:

 The amended rule supports a presumption in
 favor of venue in the county of the child's
 domicile; requires Family Part case
 management in the county where the complaint
 was originally filed to notify the State,
 and any attorney of record, of the existence
 of multiple defendants; permits the raising
 of an objection within five days of such
 notice of multiple defendants in the county
 where the complaint was originally filed and
 requires good cause to retain venue there;
 and for any other reason, a motion to change
 venue may be brought at any time, which also
 requires a finding of good cause to change
 venue.

 [The Report, supra, at 138 (emphasis
 added).]

 In this case, the juvenile complaints were filed in

Middlesex County, which is M.P.'s domicile and where the

offenses allegedly occurred. No one sought a change of venue.

The judge acted sua sponte, entering the order transferring

venue without notice to the parties. The hearing on the State's

motion was the first opportunity either party had to object.

2
 In criminal cases, subject to certain exceptions, venue
presumptively lies in the county where the offense was
committed. R. 3:14-1. Our Court Rules provide for a different
procedure in adult criminal cases, in that only a defendant may
move to transfer venue. R. 3:14-2. Such motions shall be made
to the judge assigned to try the case or the AJ, "on notice to
the other party or parties on such proofs as the court directs
and shall be granted if the court finds that a fair and
impartial trial cannot otherwise be had." Ibid.

 9 A-0303-16T2
Importantly, both M.P. and the State were placed in the

unenviable position of having to voice their objections with

virtually no information regarding the identity of the judiciary

employee, what his/her job functions entailed and what

involvement the employee or his/her family member had with the

litigation.

 Some of this information, although not all, was supplied

for the first time in the judge's written opinion denying the

State's motion. The judge relied upon the Policy. She

correctly noted, and the parties concede, policies adopted by

the Administrative Office of the Courts have the force of law.

Schochet v. Schochet, 435 N.J. Super. 542, 545 n.3 (App. Div.

2014). The Policy expressly states its purpose:

 The Judiciary and those within the scope of
 this policy have an obligation to maintain a
 high degree of integrity and to avoid any
 actual, potential or appearance of
 partiality or conflict of interest in the
 adjudication or handling of all cases. Even
 the appearance of a potential conflict of
 interest undermines the core values of the
 New Jersey Judiciary and hampers its
 mission. Accordingly, those covered by this
 policy must report any involvement
 concerning themselves, and any immediate
 family member's involvement known to the
 individual, in any litigation matter covered
 in this policy so that, if deemed necessary,
 the appropriate action may be taken to avoid
 or minimize any such appearance.

 [Policy #5-15, supra, at 1 (emphasis
 added).]

 10 A-0303-16T2
The Policy applies to all judiciary employees and requires,

among other things, that they "immediately report . . . [a]ny

personal involvement," or "[a]ny immediate family member's

involvement known to the employee," in any criminal, quasi-

criminal or non-criminal matter pending in any New Jersey state

or municipal court. Id. at 1-2.3 It defines immediate family

members. Id. at 3.

 The affected judiciary employee must submit a confidential

report to his or her Senior Manager, in this case, the TCA. Id.

at 2. The Policy then provides:

 The Senior Manager, in consultation . . .
 with the Assignment Judge . . . shall take
 appropriate action to avoid any appearance
 of impropriety. Appropriate action
 includes, but is not limited to, changing
 the venue of the matter, if permitted,[] or
 otherwise insulating the individual from the
 matter. Confidentiality will be maintained
 to the extent practicable under the
 circumstances.

 [Id. at 3 (footnote omitted) (emphasis
 added).]

3
 In the Acting Administrative Director's cover memorandum
issuing the Policy, he noted this reporting requirement expanded
prior policies, which limited reporting requirements of
immediate family members' involvement in litigation to matters
pending in the vicinage where the employee worked. Memorandum
from Glenn A. Grant, J.A.D., Acting Admin. Dir. of the Courts
(May 24, 2016).

 11 A-0303-16T2
The footnote we omitted provides: "There may be restrictions on

involuntary change of venue which make such action inappropriate

(e.g., R. 3:14-2)."

 No published case has addressed the interplay between the

Policy and our Court Rules governing venue in juvenile

delinquency matters. Our need to repeatedly address the

propriety of a court's sua sponte transfer of venue pursuant to

the Policy in criminal appeals, as reflected in the two recent

unpublished cases cited by the prosecutor, persuades us it is

necessary to provide some guidance to trial courts.

Specifically in the context of juvenile delinquency proceedings

like these, Family Part judges face the very difficult task of

balancing the reasonable expectation of a juvenile defendant and

his family expressed in our Court Rules — that venue will

presumptively lie in the county of the juvenile's domicile —

with the laudable goals of the Policy.

 II.

 We briefly address the argument that the PJ lacked

authority to enter the order. Rule 1:33-6(b) provides, "[i]n

addition to judicial duties, the Presiding Judge of each

functional unit within the vicinage shall be responsible for the

expeditious processing to disposition of all matters filed

within that unit." Moreover, "[t]he Presiding Judge shall

 12 A-0303-16T2
perform such additional administrative duties as shall be

assigned by the Assignment Judge and shall be responsible for

the implementation and enforcement within the court of all

administrative rules, policies and directives of the Supreme

Court, the Chief Justice, the Administrative Director and the

Assignment Judge." R. 1:33-6(d) (emphasis added). In short, as

the judge here properly noted, Rule 1:33-6 permitted her to

enter the order transferring venue of M.P.'s juvenile complaints

to Somerset County.

 We find further support for this conclusion in the language

of Rule 5:19-1(b), which requires any motion for a change of

venue to be heard by the PJ or her designee.

 We disagree with the State's assertion that the Policy

requires the AJ to enter any order transferring venue. The

Policy authorizes the senior manager to consult with the AJ and

take appropriate action, presumably action short of transferring

venue, since it is axiomatic that only a judge may execute an

order transferring venue. However, the policy does not require

the AJ to enter every order transferring venue from the

vicinage.4

4
 Additionally, even though the record does not reveal it
happened here, Rule 1:33-6(a) allows the AJ to "delegate to the
Presiding Judge of each functional unit within the vicinage,
 (continued)

 13 A-0303-16T2
 III.

 Because precedent regarding venue in juvenile delinquency

matters is scant, we review some well-established principles

from criminal cases, fully recognizing that additional concerns

can arise in those prosecutions because a transfer of venue may

implicate "the constitutional significance of an impartial

jury." State v. Nelson, 173 N.J. 417, 475 (2002) (citing State

v. Williams, 93 N.J. 39, 61 (1983)). Although juvenile

defendants are accorded many of the same rights as criminal

defendants, see State ex rel. P.M.P., 200 N.J. 166, 174 (2009)

(citing N.J.S.A. 2A:4A-40), the right to a jury trial is not one

of them. Ibid.; see also State ex rel. A.C., 426 N.J. Super.

81, 93 (Ch. Div. 2011), aff'd o.b., 424 N.J. Super. 252 (App.

Div. 2012).

 It is well-settled that "[v]enue is not a matter of

jurisdiction, nor is it of constitutional dimension." State v.

Zicarelli, 122 N.J. Super. 225, 233-34 (App. Div.) (citing State

v. DiPaolo, 34 N.J. 279, cert. denied, 368 U.S. 880, 82 S. Ct.

130, 7 L. Ed. 2d 80 (1961)), certif. denied, 63 N.J. 252, cert.

denied, 414 U.S. 875, 94 S. Ct. 71, 38 L. Ed. 2d 120 (1973).

(continued)
judicial duties and responsibilities allocated to the Assignment
Judge by these rules."

 14 A-0303-16T2
Venue has generally been regarded as "a mere matter of practice

and procedure." State v. Greco, 29 N.J. 94, 104 (1959) (quoting

State v. O'Shea, 28 N.J. Super. 374, 379 (App. Div. 1953),

aff’d, 16 N.J. 1 (1954)). However, "[t]his is not to belittle

the venue provisions. They embody a significant policy

decision, and an accused is entitled to insist upon them."

DiPaolo, supra, 34 N.J. at 288.

 Some of the policy reasons for presumptively laying venue

in the county of the juvenile's domicile find voice in our Court

Rules and in the Code of Juvenile Justice (the Code), N.J.S.A.

2A:4A-20 to -48. For example, Rule 5:20-4, provides that

"parents, guardians or other person having custody, control and

supervision over the juvenile shall be necessary parties to

every proceeding in all juvenile delinquency actions." "Th[e]

fundamental right of a party —— to be present during trial —— is

equally applicable to a parent in a juvenile delinquency

proceeding as a result of the adoption of Rule 5:20-4 by the New

Jersey Supreme Court." State ex rel. V.M., 363 N.J. Super. 529,

535 (App. Div. 2003); see N.J.S.A. 2A:4A-38(b) and (c)

(requiring notice to parents and their attendance at juvenile

detention hearings).

 Some of the expressed purposes of the Code include the

preservation of family unity and "fostering interaction and

 15 A-0303-16T2
dialogue between the offender, victim, and community." N.J.S.A.

2A:4A-21(a) and (f). Prior to making a disposition in a

delinquency matter, Family Part judges may order evaluations and

consider sources of information rooted in the county of

domicile, for example, county probation, "the county youth

services commission, school personnel, clergy, law enforcement

authorities, family members and other interested and

knowledgeable parties." N.J.S.A. 2A:4A-42(b). Any

predisposition report may include input from the victim.

N.J.S.A. 2A:4A-42(c)(1).

 Indeed, as the prosecutor argued in this case, the Crime

Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -38, applies to

juvenile delinquency cases. See N.J.S.A. 52:4B-37 (defining

"victim" as "a person who suffers personal, physical or

psychological injury or death or incurs loss of or injury to

personal or real property as a result of . . . an act of

delinquency that would constitute a crime if committed by an

adult, committed against that person"). Victims and witnesses

are given the right "[t]o have inconveniences associated with

participation in the criminal justice process minimized to the

fullest extent possible," and "to be present at any judicial

proceeding." N.J.S.A. 52:4B-36(d) and (p). See also State v.

Timmendequas, 161 N.J. 515, 556 (1999) (recognizing that

 16 A-0303-16T2
victims' concerns should be taken into account in deciding

whether venue should be transferred), cert. denied, 534 U.S.

858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001).

 These considerations must be balanced against the

overriding goal of the Policy — "to maintain [the Judiciary's]

high degree of integrity and to avoid any actual, potential or

appearance of partiality or conflict of interest in the

adjudication or handling of all cases." Policy #5-15, supra, at

1. These concerns find expression in our Court Rules and in a

legion of decisions by our Court, too numerous to mention. See,

e.g., R. 1:17-1 to -3, and -5 (limiting involvement of judges

and "non-judge employees" in political activity, other

employment and appointed positions); In re DiLeo, 216 N.J. 449,

471-72 (2014) (discussing public perception of integrity and

impartiality as essential to conduct of a judge); In re

Randolph, 101 N.J. 425, 441-42 (discussing the impact a

judiciary employee's involvement in public and private civic

organizations has upon the public's perception of the

judiciary's impartiality), cert. denied, 476 U.S. 1163, 106 S.

Ct. 2289, 90 L. Ed. 2d 730 (1986).

 We have no doubt that the court alone is vested with the

ultimate decision-making authority regarding any change in

venue, and that the court's authority may be exercised even in

 17 A-0303-16T2
the face of a juvenile defendant's or the State's objection.

However, that authority must be exercised in service to the

Policy's goal, and any action promoting that goal must be

"necessary" and "appropriate" under the circumstances. Policy

#5-15, supra, at 1. The Policy anticipates that its goals may

be served by something less drastic than a transfer of venue.

Specifically, "insulating the [court employee] from the matter."

Id. at 3.

 In this case, the judge stated the unidentified employee's

access to FACTS was a significant reason to transfer venue.

The system is a statewide system, and those employees with

access to Family Part case types in one vicinage may view those

case types in other vicinages. In other words, even after the

transfer of venue, the affected employee may still be able to

follow the proceedings occurring in another vicinage. The judge

also based her decision on the employee's physical location and

job duties, which entailed significant interaction with the

public, and the impracticality of "relocating" the employee.

 However, the PJ did not identify the judiciary employee at

issue, nor did she explain the relationship he or she had to the

litigation. Confidentiality is important, and in some

situations, for example, concern for an employee's safety, it

may be paramount. However, the Policy recognizes

 18 A-0303-16T2
"[c]onfidentiality will be maintained to the extent practicable

under the circumstances." Policy #5-15, supra, at 3 (emphasis

added). Particularly since the nature and extent of the

employee's involvement with this case was never discussed, it is

impossible to assess whether some remedy, short of transferring

venue, would have adequately served the Policy's goals.

 Lastly, the judge determined the "procedural safeguards

ordinarily attendant to adversarial proceedings are not employed

in the area of administrative transfers." To some extent, we

disagree. As our earlier discussion demonstrates, the

presumption that venue in delinquency cases shall be laid in the

county of the juvenile's domicile is not a trivial matter.

Therefore, we believe Rule 5:19-1 provides the basic framework

courts should follow whenever they decide sua sponte that

particular circumstances establish good cause to transfer venue

under the Policy. The court should provide the parties with

five-days' notice of its intention and an opportunity to be

heard. If there is an objection, the judge should conduct a

hearing, explaining, to the extent "practicable," the judiciary

employee's, or his or her family member's, involvement in the

matter, and the job functions of that employee that create

particularized reasons why a remedy short of transfer is

impracticable.

 19 A-0303-16T2
 In this case, M.P. and the State were not provided with any

notice of the transfer. We do not view the hearing held on the

State's motion as adequate under the procedure we have now

devised. Nor do we conclude that the judge gave adequate weight

to the presumption that venue remain in the county of the

juvenile's domicile, or to the concerns raised by the State

regarding the rights of the victim of the alleged assault. We

are therefore constrained to reverse the two orders transferring

venue of M.P.'s juvenile delinquency complaints to Somerset

County, and we remand so the judge may conduct further

proceedings consistent with this opinion.

 Reversed and remanded. We do not retain jurisdiction.

 20 A-0303-16T2